(Decided Dec. 15th, 1863.)

THOMAS HOFFMAN *vs.* THE STATE OF MARYLAND.

CRIMINAL LAW: NEW TRIAL.—THE 5TH ART. OF THE AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES. VIZ:—"*Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb,*" (being "a maxim imbedded in the very elements of the common law" and incorporated in that instrument,) is properly interpreted by the United States' Courts to mean nothing more than "that where there had been a final verdict either of acquittal or conviction, on an adequate indictment, the defendant could not be a second time placed in jeopardy for the particular offence."

WRIT OF ERROR to the Criminal Court of Baltimore City :

This appeal is from a decision of the Criminal Court of Baltimore City (STUMP, J.) over-ruling a motion to discharge the appellant on the ground that he had already been once placed in jeopardy for the same offence, and for other reasons filed. The case is fully stated in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

*D. S. Sweany,* for the appellant, argued :

1st. That the decision of the Criminal Court for Balti-

54      v. 20.

more City, over-ruling the motion for the discharge of this appellant ought to be reversed for the reasons mentioned in their motion, and this appellant be discharged. Constitution of Maryland, 19 Article of Bill of Rights. Art. 5, amendments to the Constitution of the U. S.. *Price vs. State*, 8 *Gill*, 313, 314. *1st Bishop on Criminal Law*, 659. *Peiffer vs. Commonwealth*, 3 *Harris Pa. State Rep.* 468, 470. *Commonwealth vs. Clue*, 3 *Rawle. Rep.*, 498, 500. *Commonwealth vs. Cook*, et al., 6 *S. & R.*, 577. *State vs. Kreps*, 8 *Alabama*, 956. 1 *Devereux's Rep.*, 491, 494. 2 *Devereux's & Battle's N. C.*, *Rep.*, 162 to 171. *Williams vs. Commonwealth*, 2 *Grattan Va. Rep.*, 568. *Mahala vs. State*, 10 *Yerger Tenn. Rep.*, 532.

2d. That the State having full power to secure the attendance of her witnesses by imprisonment in the jail of Baltimore City and otherwise, and the witnesses for the State having answered to their names on the 24th of October 1859, and the jury having been kept together after being sworn and charged, it was the duty of the State's attorney to have had his said witnesses secured so as to be able to have gone on with said trial to its determination by verdict.

3d. That after the jury had been summoned and sworn on the 24th of October 1859, the trial of this appellant was commenced by the State, and the absence of the State's witnesses constituted no legal or justifiable cause for the discharge of said jury without their finding a verdict.

4th. That if it was the intention of the State's attorney to try this appellant, and the jury was sworn on the 24th of October 1859, for that purpose, and if the State's attorney found any of the State's witnesses absent on the 25th of October 1859, it was his duty to have waited, and to have used the power placed in his hands to have had said State's witnesses brought into Court, and the Court erred in discharging said jury without their finding a verdict.

5th. That inasmuch as the only two counts to be found in the indictment, charge the appellant with murder in

the first degree, and it contains no counts for murder in the second degree, nor manslaughter, the appellant will contend that the verdict of the jury in the above cause was erroneous and illegal, because the jurors "upon their oath do say, that the said Thomas Hoffman is guilty of the said felony and murder above charged and imposed upon him, and that the said felony and murder, is murder of the second degree." And this appellant ought to be discharged.

6th. That the State's attorney having commenced the trial of said cause on the 24th and 25th days of October 1859, and the jury having been sworn and charged, it was incompetent for the said Court to discharge said jury without taking the verdict of said jury, and when the State's attorney refused or failed to produce evidence on the behalf of the State, it was the duty of the Court to have instructed the jury to find a verdict of "not guilty," for the want of evidence. And the plaintiff in error ought to be discharged.

*A. Stirling, Jr.*, and *N. Brewer*, for the State :

1. While the general principle may be admitted to be, that a jury must be kept together from the time they are charged with the prisoner until they deliver their verdict, unless the prisoner consents to their discharge; yet, it is equally clear, that the rule is not inflexible, that it is subject to many exceptions, and that those exceptions depend on the necessities of each case and the requirements of practical justice.

In maintaining these positions the principal enquiries are: 1st. What is meant by the 5th amendment to the Constitution of the United States, "*Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb?*" 2nd. When, or in what stage of the trial, can a party be said to be jeopardy ? These questions are inseparably connected, and both of them arise in most of the

cases cited on both sides.    We will therefore consider them together.

The principle that a man cannot be twice put in jeopardy, &c., which the appellant's counsel classes among the "inestimable rights guaranteed by the Constitutions of the United States and State of Maryland," is in fact as old as the common law itself, and had grown to be a maxim of the law long before those Constitutions came into existence, and has acquired no additional force as a settled principle of criminal law from the fact of their incorporation into our organic law.    It will be found, indeed, that the English Courts have been much more uniform and consistent in adhering to the principle than our own.

Some of the American cases maintain that a prisoner is actually in jeopardy from the moment he is put on trial under a sufficient indictment and a jury is empannelled to try his case; and others are to the effect that he is neither actually nor technically in jeopardy, until after verdict found and he is in a position to plead to a subsequent indictment "*autre fois acquit*," or "*autre fois convict*."    See *Wh. Am. Cr. Law,* 147, note.    We hold that the latter is the true doctrine.    It is the doctrine of the English Courts to whom we are indebted for the principle.

The authority of 1 *Bishop's Crim. Law,* 659, relied on by the appellant's counsel, and all the American cases cited to sustain it, are based on a *dictum* of Lord Coke. Chancellor Kent in the case of *The People vs. Olcott,* 2 *Johns. Ca.,* 301, shows very conclusively that Coke is not sustained by the case cited by him; and furthermore, that the very case has been expressly over-ruled and a contrary position maintained by a host of eminent English judges. The American cases which we cite, show that Kent is sustained by the Circuit Courts of the United States, speaking through such men as Story, McLean and Washington, in their respective Circuits; and lastly, by the Supreme Court of the United States itself.    *The People vs. Olcott,* 2 *Johns. Ca.,* 301.    *U. S. vs. Josef. Perez,* 9 *Wheat.,* 579.    *U. S. vs. Shoemaker,* 2 *McL.,* 114.    *Commonwealth vs. Olds,* 5

*Little*, 137. *U. S. vs. Gibert*, 2 *Sumner*, 19. *U. S. vs. Cooledge*, 2 *Gallison*, 364. *Commonwealth vs. Roby*, 12 *Pick.*, 496. *State vs Hall*, 4 *Halst.*, 256. *U. S. vs. Haskell & Francois*, 4 *Wash. C. C. Rep.*, 402. *People vs. Green*, 13 *Wend.*, 55. *People vs. Goodwin*, 18 *Johns.*, 200. *State vs. Woodruff*, 2 *Day*, 504. *Ned vs. State*, 7 *Porter*, 188. 2 *Arch. Crim. Law*, 594 to 598. *Commonwealth vs. Fells*, 9 *Leigh*, 613. 36 *Miss.*, 531. *McCauley vs. State*, 24 *Ala.*, 135. *State vs. M'Lemore*, 2 *Hill's S. C. R.*, 480. *Murphy vs. People*, 2 *Cowen*, 820. *Com. vs. Bowden*, 9 *Mass.*, 494. *Kinlock's Case, Foster*, 22 to 40.

2. That, the rule not being inflexible must depend on the circumstances of each case, and the discharge of a jury is a matter in the sound discretion of the judge, in each case, and the prisoner must show of record an abuse of discretion. Same cases above cited, and 2 *Hales P. C.*, 295. 2 *Graham & Waterman on New Trials*, 85, note (1.)

3. That where the judge acts within the scope of his discretion, the exercise of the discretion is not the subject of review by the appellate Court, and that the presumption is that he so acted.

4. That in this case the judge acted within the scope of his discretionary power, and that the absence of witnesses under the circumstances disclosed by the record is a cause for the discharge of a jury.

5. In answer to the point made by the plaintiff in error as to the form of the verdict, the State says the indictment is for murder, and that the degree is properly found by the jury, and the plaintiff's ideas about "counts for murder in the second degree and manslaughter" are erroneous, and that the indictment, verdict and judgment are in express conformity to the precedents and to the decisions of the Court of Appeals. *Weighorst vs. State*, 7 *Md. Rep.*, 450. *Manly vs. State, Id.*, 135. *State vs. Flannigan*, 6 *Id.*, 167.

Bowie, C. J., delivered the opinion of this Court:

The plaintiff in error being indicted for murder, jointly with one Robert Miller, by the grand jurors of the State of

Maryland, for the City of Baltimore, and being arraigned, severed in his defence, and pleaded *not guilty*. On the 25th of October 1859, a jury was empannelled and sworn. The State's witnesses being called did not answer; attachments were issued and the Court was adjourned to the 26th of October 1859. The attachments being returned *non est*, the following proceedings were entered of record: "And. afterwards, to wit: on the said 26th day of October, in the year 1859, because it appears to the said Court here, that after the said jury had been sworn, and the above indictment had been read to them, and they had been charged in the usual way by the clerk of the Court here, several witnesses for the State who had been in attendance up to that period, had been discovered to be absent, and that after adjournment to the next day, the said witnesses were still absent, which said witnesses had been duly summoned and put under security for their presence in Court upon the trial of the case, and attachments against them having been issued and returned '*non est*,' no statement having been made or evidence offered to the jury in the said case, therefore, by order of the said Court here, the said jury are discharged, and are wholly discharged from giving any verdict of and upon the premises above mentioned in the said case of the said Thomas Hoffman, the said Thomas Hoffman by his attorney objecting to the said discharge of the jury aforesaid."

Whereupon the counsel of the plaintiff in error moved the Court to discharge him from imprisonment for the following reasons:

*First.* Because heretofore, to wit: on the 25th day of October 1859, he was put upon trial under said indictment, and a jury was regularly sworn and charged to try said case, as will appear by the records of this Court; and he cannot be put twice in jeopardy of life for same alleged offence.

*Second.* Because heretofore, on the 25th of October 1859, he was put upon trial under said indictment, and a jury was regularly sworn and charged, to try said case, and said jury was afterwards, on the 26th of October 1859, dis-

charged by order of the Court, but against the consent of this prisoner, as will appear by the records of this Court; and he cannot, for the same alleged offence, be twice put in jeopardy of life.

*Third.* Because heretofore, on the 25th of October 1859, this prisoner was put upon trial in this Court, and a jury regularly sworn and charged, to try his said case; and afterwards, and without his consent, said jury was discharged, by order of the Court, before they had agreed upon a verdict, as will appear by the records of this Court, and he cannot be put again upon trial for the same alleged offence.

*Fourth.* Because heretofore, on the 25th of October 1859, this prisoner after having been arraigned, and after having pleaded not guilty to said indictment, was put upon trial in this Court, and a jury was regularly sworn and charged, in due form of law, to try his said case, and after said jury was sworn and charged, but before they had agreed upon a verdict, they were discharged by order of the Court, against the consent of this prisoner, and without any lawful necessity; wherefore he says that he cannot again be put upon trial for the same alleged offence.

*Fifth.* Because heretofore, on the 25th of October 1859, this prisoner, after arraignment under said indictment, and after having pleaded not guilty to the same, was put upon trial upon said indictment, and a jury was regularly sworn and charged in due form of law, to try said case; and after said jury had been so sworn and charged, but before they had agreed upon a verdict, they were discharged by order of the Court, against the consent of this prisoner, and without any absolute necessity, as will appear by the records of this Court; wherefore he is advised that he cannot be again put in jeopardy of his life for the same alleged offence; and prays that an order may be passed for his discharge from further imprisonment under said indictment.

Which motion was over-ruled and the prisoner after continuing the cause to a subsequent term, was again brought

to the bar, a jury empannelled and sworn, and a verdict of guilty of murder in the second degree rendered and recorded. Judgment and sentence having been passed, the prisoner prayed a writ of error.

The reasons assigned in support of the motion to discharge, involve the proposition, that after a jury has been empannelled in a criminal case and charged with the prisoner, they cannot, in this State, be discharged against the consent of the prisoner without some physical necessity or act of God. The motion is based upon a clause of Art. 5th of amendments to the Constitution of the United States, which provides, "Nor shall any person be subject for the same offence, to be twice put in jeopardy of life or limb." Every right guaranteed to a prisoner by the Constitution and laws, should be jealously guarded and scrupulously observed by the Courts.

The importance and value of the principle on which the motion to discharge is founded in this case, is shown in the fact, that although handed down by the common law for centuries, and recognized in innumerable instances, it was thought proper to embody it in the Constitutions of several of the States, and engraft it, by way of amendment, on that of the United States.

If this were a question of first impression, grave doubts might be entertained as to its proper solution. The constitutional prohibition, interpreted in its popular sense, would seem to bear the construction put upon similar provisions, in Pennsylvania, North Carolina, Tennessee and Alabama, in the cases cited by the plaintiff in error. Chief Justice Gibson's language, in 3 *Raw.*, 498, is a forcible expression of his opinion of the meaning conveyed by the words "twice put in jeopardy of life or limb." "In the legal, as well as the popular sense," says that learned judge, "he is in jeopardy the instant he is called to stand on his defence, for from that instant every movement of the commonwealth is an attack upon his life." But these terms "twice in jeopardy" have a technical meaning, as a maxim of the

common law they had acquired long anterior to their incorporation into the Federal Constitution, a certain and fixed sense. In the decisions of the English Courts antecedent to the Constitution, they had been construed as equivalent to *autre fois acquit,"* or *"autre fois convict."* Cotemporaneous construction is the true interpreter of language. Being transformed from a legal maxim to a constitutional clause, does not, it is apprehended, change the meaning of words, although it makes the right they guaranty, more solemn and sacred. In this State there has been no judicial interpretation of these terms by the Court of last resort. The case in 8 *Gill*, of *Price vs. The State*, was a question of venue; whether the right to change it was lost by the stage to which the cause had advanced, and there it was held, the trial was not commenced until the jury was sworn. In several of our sister States, and in the Circuit and Supreme Court of United States, this question has been frequently adjudicated. The cases are collated in the excellent elementary treatise of *Wharton on Crim. Law*, under the title "Once in Jeopardy." It is there said: "In this country the constitutional provision has, in some instances, been construed to mean more than the common law maxim, and in several of the States it has been held, that where a jury in a capital case has been discharged without consent before verdict, the defendants under certain limitations, may bar a second prosecution by a special plea setting forth the fact, that his life has already been put in jeopardy for the same offence.

"The cases may be placed in two general classes:

*First*. Where any separation of the jury, except by consent, or in case of such violent necessity as may be considered the act of God, is held a bar to all subsequent proceedings.

*Second*. Where it is held that the discharge of the jury is a matter of pure discretion for the Court, and that when, in the exercise of a sound discretion, it takes place, it presents no impediment to a second trial. The first view has

been taken by the Courts of Pennsylvania, North Carolina, Tennessee and Alabama," *Wharton,* 147.

After citing several cases from these States, the author proceeds:

"In each of the foregoing cases the opinion of the Court was founded on the assumption, that to be on trial twice, within the meaning of the Constitution, was to be in jeopardy. That such is not the case, but on the contrary, no man is in jeopardy until verdict rendered, has been held by the Supreme Court of the United States, by Washington, J., Story, J. and McLean, J., sitting in their several Circuits, and by the Courts of Massachusetts, New York and Mississippi." *Wharton Crim. Law,* 150, citing *United States vs. Perez,* 9 *Wheaton,* 579. *Com. vs. Bowden,* 9 *Mass.,* 194. *Com. vs. Purchase,* 2 *Pick.,* 521 *People vs. Goodwin,* 18 *John. Rep.,* 187. *United States vs. Gilbert, Sumner,* 19. *United States vs. Shoemaker* 2 *McLean,* 114. *United States vs. Coolidge,* 2 *Gall.,* 364.

In the conflict of opinion between some of the State Courts and other State and Federal tribunals as to the construction of a clause of the Constitution of the United States, we feel constrained to conform to the decisions of those Courts, which were especially ordained and established by it, and invested with authority to construe that instrument. Hence, we adopt the conclusion that the clause of the 5th Article of the Amendments of the Constitution of the United States, viz: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb," being "a maxim imbedded in the very elements of the common law," and incorporated into that instrument, is properly interpreted by the authorised exposition established at its adoption. "At common law it meant nothing more than that where there had been a final verdict either of acquittal or conviction, on an adequate indictment, the defendant could not be a second time placed in jeopardy for the particular offence." 147 *Wharton's Crim. Law,* and cases there cited.

Hoffman *vs.* State.

Guided by this rule, we are of opinion that the prisoner in this case, was not entitled to be discharged on the grounds and for the reasons alleged in the motion. He was not "for the same offence twice put in jeopardy of life or limb."

But it has been argued by the counsel on behalf of the plaintiff in error, that the first jury empannelled for the trial of the prisoner had been discharged by the Criminal Court against his consent and without sufficient cause, and for that reason he ought not to have been brought to trial a second time. This raises the question whether it is competent for this Court upon a writ of error to review the action of an inferior Court in this respect, and to inquire into and decide upon the sufficiency of the reasons governing the inferior tribunal. A majority of this Court are of opinion that we have no such power, for the reason that it is a matter which rests entirely in the discretion of the Court exercising original jurisdiction, and therefore its action is not a subject of review upon writ of error.

In the case of the *United States vs. Haskell & Francois*, 4 *Wash., C. C. R.*, 403, Washington, Justice, says: "We consider the authority of the Court to discharge the jury to rest on the sound discretion of the Court. It can rest no where else. It is merely an incidental matter arising in the progress of the trial in no way connected with the question before the jury of guilty or not guilty. It is an incidental matter depending upon circumstances appearing to the satisfaction of the Court, as requiring them in the proper administration of justice to discharge the jury. It is surely as much a matter of discretion as granting a new trial after a verdict is rendered." See also *People vs. Green*, 13 *Wend.*, 56.

*Writ of error dismissed.*

(Decided Dec. 23rd, 1863.)