## STATE OF MARYLAND *v.* LEONARD JOSEPH MATHER

[No. 470, September Term, 1968.]

*Decided August 13, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Joseph C. Sauerwein, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

*Albert J. Ahern, Jr.,* with whom was *William R. Scannell* on the brief, for appellee.

MURPHY, C.J., delivered the majority opinion of the Court. ORTH, J., concurs. Concurring opinion by ORTH, J., at page 555 *infra.*

The question here to be decided is whether the State has the right to appeal to this court from the granting of the defendant's pretrial motion to suppress evidence alleged by him to have been obtained as a result of an unlawful search and seizure.

Appellee Mather was charged in Prince George's County with unlawfully having caused the termination of a human pregnancy in violation of Chapter 470 of the Acts of 1968, now codified as Sections 149E-149G of Article 43 of the Maryland Code (1968 Supp.). Prior to trial, Mather filed a motion to suppress designated items of personal property which had been seized by the police from his residence at the time of his arrest, the motion being based on the ground that the search for and seizure

of such items was violative of his rights under the Fourth Amendment to the Federal Constitution. A pretrial evidentiary hearing was then held, following which the court granted Mather's motion to suppress and ordered that all such illegally seized evidence be returned to Mather. The State promptly noted an appeal from the lower court's "Opinion and order * * * suppressing the evidence." Mather filed a motion to dismiss the State's appeal on the ground that the order appealed from did not constitute a final judgment and that, consequently, we were without jurisdiction to consider the substantive search and seizure questions raised by the State's appeal.

Chapter 399 of the Acts of 1957 repealed all prior statutes regulating the right of appeal in criminal cases and enacted in lieu thereof a number of new provisions relating thereto including, under the specific subheading "Right of appeal by State," what is now codified as Section 14 of Article 5 of the Maryland Code. That Section, as amended by Chapter 12 of the Acts of 1966, reads:

> "The State may appeal to the Court of Special Appeals from a final order or judgment granting a motion to dismiss, or quashing or dismissing any indictment, information, presentment or inquisition in a criminal action, but the State shall have no right of appeal in any criminal action where the defendant has been tried and acquitted."

Prior to the enactment of Section 14, the common law of this State, as articulated in *State v. Buchanan,* 5 Har. & J. 317, 324, permitted the State to seek appellate review by writ of error of a judgment in a criminal case sustaining a demurrer to or quashing an indictment. *State v. Adams,* 196 Md. 341, and *State v. Barshack,* 197 Md. 543, both decided prior to the enactment of Section 14, involved the question whether the State's common law right of appeal under *Buchanan* permitted it to appeal

from the granting of a motion quashing a search warrant and/or suppressing evidence on the ground that it had been illegally seized. It was argued in those cases, as it is here, that the effect of granting such a motion is to strip the State of its evidence and render it powerless to proceed to trial, the result being that the granting of such motions is tantamount to the sustaining of a demurrer to the indictment, thus terminating the prosecution, and discharging the accused. This argument was flatly rejected by the Court of Appeals in both *Adams* and *Barshack*. Recognizing the rule that an appeal in a criminal case is premature until after final judgment,[1] the court in *Barshack* held at page 544 that the granting of such a motion "was no more final than would be any other ruling excluding testimony at a trial." And in *Adams* the court held at page 351 that "If a broader right of review is necessary in the interest of criminal justice, it must be granted by the legislature." We think it plain that the Legislature, in enacting Section 14, did not grant the "broader right of review" mentioned in *Adams,* but, on the contrary, limited the scope of the State's right to appeal to final orders or judgments granting a motion to dismiss or quashing the indictment.

The State argues that under Section 14, it is authorized to appeal from any final order or judgment involving an "inquisition in a criminal action"; that by the decision in *Phillips v. Vessells,* 126 A. 51 (Del.), such an "inquisition" would cover any "judicial inquiry" and, as the lower court's granting of Mather's motion to suppress evidence was a "judicial inquiry" finally adjudicating the question against the State, the State may appeal therefrom under Section 14. Although reflecting much ingenuity, we find the State's argument unsound. Under Section 14, the State's right of appeal is from a final order or judgment granting a motion to dismiss or quashing an indictment, information, presentment "or inquisi-

---

1. To the same effect, see *Pearlman v. State,* 226 Md. 67; *State v. Haas,* 188 Md. 63.

tion in a criminal action." While in its broadest sense, the term "inquisition" may include any judicial inquiry, it is readily apparent that as used in Section 14 an "inquisition in a criminal action" bears close kinship to charging a person with crime by indictment, information, or presentment. Indeed, the term has generally been confined to a factual inquiry made by a jury, together with the instrument of writing upon which the jury's decision is based. See Black's Law Dictionary, Third Edition; 43 C.J.S. *Inquisition,* page 1209. We need not, however, determine the exact breadth of the term "inquisition" as used in Section 14. We decide only that it cannot properly be interpreted to authorize the State to appeal from the lower court's granting of Mather's pretrial motion to suppress the evidence.

In the March, 1969 publication of the American Bar Association entitled "Standards Relating to Criminal Appeals," the observation is made at page 37 that most states, while permitting prosecution appeal of pretrial decisions that formally terminate the case, do not presently allow appeals from orders suppressing evidence. But as the publication notes at pages 34-38, there has been a recent trend among the states to enact legislation permitting the State to appeal from such rulings where the practical effect of the ruling is to preclude further prosecution of the case or seriously impede its continuation. And see 18 U.S.C.A., Section 3731, wherein the Congress of the United States has authorized an appeal by the government from pretrial orders suppressing evidence if the United States Attorney certifies to the trial court that "the appeal is not taken for purpose of delay and that the evidence is a substantial proof of the charge pending against the defendant." In this general connection, we note that by Maryland Rule 729, adopted September 1, 1967, if a motion suppressing evidence is denied or overruled, the objection of the accused thereto is expressly preserved for appellate review, whereas the only mention made by the Rule of the effect of granting such a motion is to require the State to return the

illegally obtained property to the accused.[2] Under the present law of Maryland, therefore, the State has no right to appeal, either by statute, by rule, or under the common law, from the granting of a motion to suppress evidence. For an interesting discussion of the State's right to appeal in criminal cases see the excellent series of articles appearing in Volumes 4, 7 and 12 of the Maryland Law Review, respectively at pages 303-312, 364-367, and 68-87. See also *State v. Barger,* 242 Md. 616, 626; *State v. Fisher,* 204 Md. 307; *State v. James,* 203 Md. 113; *State v. Rosen,* 181 Md. 167; *State v. Shields,* 49 Md. 301; *State v. Bass,* 281 S. W. 936 (Tenn.), and *State v. Studer,* 270 P. 430 (Wash.), cited with approval in *State v. Barshack, supra,* and Orfield, *Criminal Appeals in America* (1939) at pages 55-76, dealing generally with the states' right of appeal in criminal cases.

Further illustrating the depths of the State's frustration in seeking a way to obtain appellate review of the lower court's order suppressing the evidence is its final contention—pursued, we think, with commendable zeal —that we issue a writ of prohibition to preclude the trial court from excluding the evidence under its order granting the motion to suppress. Such a writ was recognized at common law and has been generally defined as a process by which a superior court prevents inferior courts from usurping or exercising jurisdiction with which they have not been vested. See 73 C.J.S. *Prohibition,* Section 1, et seq. It is thus not the function of the writ to review proceedings, and assuming we had authority to issue such a writ, we would not under the circumstances of this case do so.

In dismissing the State's appeal for want of jurisdiction to decide the complex constitutional question presented by the State, we can but echo the statement of the Court of Appeals in *Adams,* repeated and reemphasized

2. We express no opinion respecting the power of the Court of Appeals to enact a Rule under its rule-making authority permitting the State to appeal from the granting of a motion to suppress evidence.

in *Barshack,* that "If a broader right of review is necessary in the interest of criminal justice, it must be granted by the legislature."

*Appeal dismissed.*

ORTH, J., concurring:

I agree that the State does not have the right to appeal to this Court from the granting of the defendant's pretrial motion to suppress evidence alleged to have been obtained as a result of an unlawful search and seizure and I am in full accord with the reasons so clearly stated by Chief Judge Murphy, speaking for the Court, in arriving at this determination. But I think we should define the meaning of "inquisition in a criminal action" as used in Md. Code, Art. 5, § 14 in affirmative terms rather than deciding only that "it cannot properly be interpreted to authorize the State to appeal from the lower court's granting of Mather's pretrial motion to suppress the evidence." I feel that any doubt as to its meaning should be laid to rest. Judge Murphy states that the term "bears close kinship to charging a person with crime by indictment, information or punishment" and that it "has generally been confined to a factual inquiry made by a jury, together with the instrument of writing upon which the jury's decision is based." I find it clear that within the context of § 14 "inquisition" refers only to a formal mode of charging a person with a crime and encompasses no broader meaning. At the common law the manner of the formal accusation of offenders, by prosecution, was either upon a previous finding of the fact by an inquest or grand jury, or without such previous finding. The former way was either by presentment or indictment. "Presentment" included, not only presentments properly, so called, but also inquisitions of office, and indictments by a grand jury.[1] An "inquisition of office"

---

1. A presentment, properly speaking, was the notice taken by a grand jury of any offense from their own knowledge or observation, without any bill of indictment laid before them at the suit of the king; after presentment the officer of the court must frame an indictment, before the party presented need answer. An in-

was the act of a jury, summoned by a proper officer, to inquire of matters relating to the crown, upon evidence laid before them. Some of them were in themselves convictions, and could not afterwards be traversed or denied. Therefore, as to those, the inquest or jury should hear both sides.[2] Other inquisitions could be traversed and examined, as particularly the coroner's inquisition in the death of a man, when it found anyone guilty of homicide; in such cases, the offender, so presented, must be arraigned upon this inquisition and might dispute the truth of it. See *Blackstone's Commentaries on the Law,* Gavit Ed., Book IV, Ch. XXVIII, p. 877. A coroner's inquest could be held only in cases of deaths when there was notice or reasonable suspicion of violent or unnatural death, or the death of a prisoner in jail. The proceedings were in the nature of a preliminary investigation and consisted essentially of the summoning of a jury, view of the body and inquisition.[3] The scope of the inquiry was as to the circumstances of the death, and the persons, if any, who were culpable. The verdict of the jury was returned in the form of a certificate, signed (and generally sealed) by the coroner and all the jurors, finding when, where and how the deceased came to his death and who, if any, was culpable and to what extent. If one was accused of murder or manslaughter, or accessory thereto, by the verdict, it was the duty of the coroner to put in writing the effect of the evidence; to bind the witnesses for the prosecution to appear at the next term of

---

dictment was a written accusation of a person of a crime, preferred to, and presented upon oath by a grand jury.

2. Of this nature, for example, were all inquisitions of *felo de se*—suicide; of flight in persons accused of felony; and deodands —any personal chattel which was the immediate occasion of the death of any reasonable creature, and which was forfeited to the crown to be applied to pious uses, and distributed in alms by the high almner. 1 Hale, P. C. 419.

3. The coroner was the proper officer to take an inquest on view of the body. Inquisitions of homicide could be taken by justices of the peace, or other justices authorized to inquire of felonies, in cases when the body could not be found, or had laid so long, that a view could be of no assistance, or if there was danger of infection from digging up. 1 East. P. C. 379.

the court having jurisdiction of the offense charged; to certify such evidence and recognizances together with the inquisition found to the court; to commit the accused for trial. At the strict common law, it had the effect of an indictment upon which the accused might be arraigned and tried. See *Hochheimer's Criminal Law*, 1st Ed., §§ 391-405, pp. 246-252.[4]

In Maryland today a trial for a criminal offense shall be held only on indictment. Md. Rule 703. "Indictment," as defined by Md. Rule 702a, "shall include an indictment, a criminal information, and a warrant issued by a justice of the peace where a jury trial was prayed before a trial magistrate or an appeal has been taken from a trial magistrate." No man may be convicted by "inquisition of office" which he may not traverse and deny for, "in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty." Constitution of Maryland, Declaration of Rights, Art. 21. And by Art. 23 of the Declaration of Rights "no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Nor does there exist today a coroner's inquest leading to a verdict by a jury of inquisition which has the effect of an indictment upon which a person accused of murder or manslaughter may be arraigned and tried. The cor-

---

4. For the history of the development of the criminal procedure which makes use of two "inquests" or "inquisitions," one for the purpose of indictment, another for the purpose of trial, see *The History of the English Law*, Pollock and Maitland, Vol. II, Ch. IX, § 4, pp. 598-674.

oner has been replaced by the Department of Postmortem Examiners with authority to appoint a chief medical examiner and other professional or technical personnel. Md. Code, Art. 22, §§ 1 and 2. When any person shall die "as a result of violence, or by suicide, or by casualty, or suddenly when in apparent health or when unattended by a physician, or in any suspicious or unusual manner," the medical examiner shall take charge of the body and "fully investigate the essential facts concerning the medical causes of death." Code, Art. 22, § 6. See also Code, Art. 43, § 20. But the medical examiner "shall not have the power or be required to summons a jury of inquisition." Code, Art. 22, § 9.

I believe that the authority given the State by Code, Art. 5, § 14 to appeal from a final order or judgment granting a motion to dismiss any "inquisition in a criminal action," in light of the Declaration of Rights, refers only to a verdict of a jury of inquisition, as distinguished from a grand jury, accusing a person of murder or manslaughter, or accessory thereto. As an accused may no longer be tried on such a verdict and as the power to summons such a jury for such purpose no longer exists, that provision of § 14 is an anachronism and is meaningless.