STATE OF MARYLAND *v.* JAMES FRANK CAMPBELL AND RICHARD PAUL REEVES

[No. 441, September Term, 1968.]

*Decided August 13, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donald W. Mason, State's Attorney for Allegany County,* and *Paul J. Stakem, Deputy State's Attorney for Allegany County,* on the brief, for appellant.

*J. Frederick Sharer,* with whom was *William L. Wilson* on the brief, for appellees.

MURPHY, C.J., delivered the majority opinion of the Court. ORTH, J., concurs. Concurring opinion by ORTH, J., at page 542 *infra.*

This appeal presents the question whether the State is empowered by Maryland Code (1968 Supp.), Article 5, Section 30 to appeal to the Circuit Court for Allegany

County from acquittals entered by a trial magistrate in that jurisdiction in two cases charging criminal violations of the Motor Vehicle Code, *viz.*, as to appellee Campbell, driving under the influence of liquor in violation of Maryland Code, Article 66½, Section 206; and as to appellee Reeves, intentionally spinning the wheels of his motor vehicle in violation of Section 210 of that Article.[1]

In *Benton v. Maryland,* 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), the Supreme Court of the United States overruled *Palko v. Connecticut,* 302 U. S. 319, and held that the guarantee against double jeopardy contained in the Fifth Amendment to the Federal Constitution[2] is applicable to and enforceable against the states through the Fourteenth Amendment. That constitutional guarantee protects against a second prosecution for the same criminal offense after acquittal by a tribunal competent to try the accused, and hence prohibits the government from securing a new trial by means of an appeal, even though the acquittal may appear to be erroneous. *North Carolina v. Pearce,* 395 U. S. 711, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1969); *Green v. United States,* 355 U. S. 184; *United States v. Ball,* 163 U. S. 662; *United States v. Sanges,* 144 U. S. 310.

It would thus appear to be an exercise in academic futility for us to determine whether Section 30 of Article 5 authorizes the State to appeal from the magistrate's judgments acquitting the appellees, since, if it does, it is plainly unconstitutional in light of *Benton.* See also *Kepner v. United States,* 195 U. S. 100. In so concluding, we are mindful of the principle that the rule of double jeopardy is generally applicable only when the first prose-

---

1. We granted the State's petition for a writ of certiorari to consider the question, the Circuit Court for Allegany County having dismissed the State's appeal on the ground that Article 5, Section 30 did not, as contended by the State, authorize an appeal to the Circuit Court from a judgment of acquittal by a trial magistrate.

2. "(N)or shall any person be subject for the same offense to be twice put in jeopardy of life and limb * * *."

cution involves a trial before a court having jurisdiction and empowered to impose punishment by way of a fine, imprisonment, or otherwise as a deterrent to the commission of crime; in other words, the concept of double jeopardy clearly contemplates that action which bars a second prosecution must be one lawfully instituted in a court or tribunal which has the power to convict and punish the person prosecuted for his criminal conduct. *Moquin v. State,* 216 Md. 524; *Smith v. State,* 1 Md. App. 297. It is not contended by the State that the trial magistrate did not have jurisdiction to try the appellees. And it is clear that the offenses charged against appellees constituted violations of the criminal laws of this State, each being a misdemeanor punishable by imprisonment or fine or both. Under these circumstances, we hold that the federal constitutional protection against double jeopardy enunciated by *Benton* manifestly applies to a case involving, as here, an acquittal before a magistrate having jurisdiction to try the case and to impose punishment; and such acquittal operates as a bar to a subsequent prosecution for the same offense by a court of general or superior jurisdiction, *i.e.,* the Circuit Court for Allegany County. See 22 C.J.S. *Criminal Law,* Sections 268, 270, and cases there cited, particularly *State v. Ridgley,* 424 P. 2d 632 (Wash.). Compare *Bennett v. State,* 229 Md. 208, 220, and *State v. Lingner,* 183 Md. 158, holding that under common law principles relating to double jeopardy where the offense is one over which an inferior tribunal has jurisdiction, an acquittal by that tribunal will bar a subsequent prosecution in a superior tribunal for the same offense. See also *Crawford v. State,* 174 Md. 175, holding that where the magistrate is without jurisdiction to try an offense, the accused has not been placed in jeopardy and may be subsequently charged for the same offense.

It has, of course, long been a well recognized part of the common law of this State that the rule against double jeopardy forbids a second trial for the same offense after

acquittal. *State v. Barger,* 242 Md. 616, and cases cited at pages 618-619; *Boone v. State,* 3 Md. App. 11, 23-30. But as there was no Maryland constitutional provision protecting against double jeopardy, and so long as under *Palko v. Connecticut, supra,* the Fifth Amendment provision against double jeopardy was not applicable to the states, the right of the legislature, by statute, to change the common law rule of double jeopardy and authorize the State to appeal, even from an acquittal, was equally well recognized. *Ford v. State,* 237 Md. 266; *Bennett v. State, supra; State v. Adams,* 196 Md. 341; *Johnson v. State,* 191 Md. 447; *Robb v. State,* 190 Md. 641; *Jenkins v. State,* 3 Md. App. 243. That *Benton* changes the Maryland law in this respect and prohibits the Legislature of this State, as a matter of federal constitutional law, from authorizing the State to appeal from a judgment of acquittal is clear and definite, and to the extent that Section 30 of Article 5 would authorize the State to appeal, it is unconstitutional as violative of the Fourteenth Amendment to the Constitution of the United States.[3]

*Appeal dismissed.*

ORTH, J., concurring:

This case comes to us on writ of certiorari to the Circuit Court for Allegany County. Md. Rule 1011(b). The appellees were acquitted of charges of criminal violations of the Motor Vehicle Code at a trial before a magistrate on 27 August 1967. The State appealed to the Circuit Court for Allegany County. Each appellee moved to

---

**3.** Nothing in *Benton* interdicts the general right of the State to appeal under Maryland Code, Article 5, Section 14, "from a final order or judgment granting a motion to dismiss, or quashing or dismissing any indictment, information, presentment or inquisition in a criminal action * * *." In such a case, the accused has not been placed in jeopardy. And while the State is presently without statutory authority to appeal from the granting of a motion to suppress evidence, see *State v. Mather,* 7 Md. App. 549, we think it clear that the double jeopardy provisions of the Federal Constitution would not proscribe such an appeal. See *Kepner v. United States, supra.*

dismiss the appeal and upon hearing the motions were granted. The holding in *Benton v. Maryland*, 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), that the guarantee against double jeopardy contained in the Fifth Amendment to the Constitution of the United States is applicable to and enforceable against the states through the Fourteenth Amendment, prohibits the further prosecution of the appellees on the charges of which they were acquitted at a trial before a tribunal competent to try them. To now again try them would be to place them twice in jeopardy in violation of the constitutional guarantee. Thus, assuming that Md. Code, Art. 5, § 30 authorized the State to appeal to the circuit court for the county from any judgment of a trial magistrate in any motor vehicle cause, upon which such appeal "the Court to which the appeal is taken shall hear the case de novo and determine the same according to the law and the equity and the right of the matter," such authorization is rendered unconstitutional by *Benton*. I agree that the appeals must be dismissed.

This decision is properly reached without regard to the retroactivity *vel non* of *Benton*, for even if *Benton* is prospectively applied, the appellees, in the circumstances here, having not been retried prior to *Benton*, could not again be placed in jeopardy. I think, however, that it should be made abundantly clear that our decision is not to be interpreted as construing *Benton* to be retroactive. I believe that it has only prospective application.

It is difficult to reconcile the rationale of the opinions of the Supreme Court dealing with the retroactivity of its various constitutional pronouncements. It appears, however, that there is a choice between prospective or retroactive application of constitutional doctrine when there is a clear break with the past, even when clearly foreshadowed, as distinguished from a pronouncement which does not depart from any existing interpretation but merely confirms the previous demise of obsolete decisions. See *Desist v. United States*, 89 S. Ct. 1030, 1032-

1033. It was established in *Linkletter v. Walker,* 381 U. S. 618, 629 that "the Constitution neither prohibits nor requires retrospective effect" for decisions expounding new constitutional rules affecting criminal trials. I am aware of the criteria guiding resolution of the question as summarized in *Stovall v. Denno,* 388 U. S. 293, 297: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards," but I find no real consistency in the application of these criteria other than a tendency away from complete retroactivity. The Court said in *Johnson v. New Jersey,* 384 U. S. 719, 728:

> "[T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved."

Certainly the assistance of counsel is now established as a fundamental right at each critical stage of a criminal proceeding. Where the denial of that right must almost invariably deny a fair trial, the right has been applied retroactively. It is so applied at the trial itself, *Gideon v. Wainwright,* 372 U. S. 335, at some forms of arraignment, *Hamilton v. Alabama,* 368 U. S. 52, and on appeal, *Douglas v. California,* 372 U. S. 353. But while a pretrial confrontation was determined to be a critical stage of a criminal proceeding in *United States v. Wade,* 388 U. S. 218 and *Gilbert v. California,* 388 U. S. 263, and the rules therein enunciated were "aimed at avoiding unfairness at the trial by enhancing the reliability of the fact finding process," *Stovall, supra,* at 298, it was held that *Wade* and *Gilbert* "affect only those cases and all

future cases which involve confrontations for identification purposes conducted in the absence of counsel" after the date of the *Stovall* opinion. 388 U. S. at 296. The Court has also retroactively applied rules of criminal procedure fashioned to correct serious flaws in the fact finding process at trial, as, for example, in *Jackson v. Denno*, 378 U. S. 368. It is noted, however, that the degree of retroactivity adopted in *Linkletter*—that *Mapp v. Ohio*, 367 U. S. 643 was applicable to every case still pending on direct appeal on the date of that decision—and in *Tehan v. United States ex rel Shott*, 382 U. S. 406, adopting a similar approach as to *Griffin v. California*, 380 U. S. 609, was abandoned in *Johnson v. New Jersey*, *supra*, in which it was concluded that "there are no jurisprudential or constitutional obstacles" to the adoption of a different cut-off point. *Id.*, at 733. Johnson held that *Miranda v. Arizona*, 384 U. S. 436 and *Escobedo v. Illinois*, 378 U. S. 478 applied only to cases the trial of which began after the dates of those decisions.[1] So in *Desist v. United States*, *supra*, it was held that *Katz v. United States*, 389 U. S. 347 "is to be applied only to cases in which the prosecution seeks to introduce the fruits of electronic surveillance conducted after December 18, 1967," the date of the *Katz* opinion. And *Fuller v. Alaska*, 393 U. S. 80, held that the exclusionary rule of *Lee v. Florida*, 392 U. S. 378 should be accorded only prospective application.

*Benton* itself does not touch on the question of its retroactive application. I recognize that its constitutional pronouncement that the guarantee against double jeopardy in the Fifth Amendment to the Constitution of the United States is applicable to and enforceable against the states through the Fourteenth Amendment cannot be considered, as to retroactivity, under the precise ra-

---

1. *Jenkins v. Delaware*, 395 U. S. 213, held that *Miranda's* standards for determining the admissibility of in-custody statements do not apply to post-*Miranda* retrials of cases originally tried prior to that decision. This Court had so held in *Boone v. State*, 3 Md. App. 11, 31-36.

tionale determining the retroactivity of exclusionary rules with respect to evidence illegally obtained or other rules fashioned to correct serious flaws in the fact finding process at trial or to deter improper police activity. *Benton* set out the purpose of its ruling by quoting from *Green v. United States*, 355 U. S. 184, 187-188:

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

But it seems to me that even in the light of the purpose to be served by the *Benton* rule, there should be given serious consideration to the extent of the reliance on the old standard and the effect on the administration of justice of a retroactive application of the new standard. We have experienced the chaotic effect on the administration of justice of the holding in *Schowgurow v. State,* 240 Md. 121, overturning a practice followed for years under the authority of a provision in the Declaration of Rights of the Constitution of Maryland, by giving it even limited retroactive effect by applying it to convictions which had not become final before rendition of that opinion. *Id.,* at 132. *Linkletter v. Walker, supra, Tehan v. United States ex rel Shott, supra, Johnson v. New Jersey, supra,* established the principle "that in criminal litigation concerning constitutional claims, 'the Court may in the interest of justice make the rule prospective * * * where the exigencies of the situation require such an application.' " *Johnson, supra,* 384 U. S. at 726-727; *Stovall v. Denno, supra,* 388 U. S. at 296-297. I feel that the

exigencies of the situation require such an application of the *Benton* rule. The Court said in *Benton*:

> "In 1937, this Court decided the landmark case of *Palko v. Connecticut,* 302 U. S. 319. Palko, although indicted for first-degree murder, had been convicted of murder in the second degree after a jury trial in a Connecticut state court. The State appealed and won a new trial. Palko argued that the Fourteenth Amendment incorporated, as against the States, the Fifth Amendment requirement that no person 'be subject for the same offence to be twice put in jeopardy of life or limb.' The Court disagreed. Federal double jeopardy standards were not applicable against the States. Only when a kind of jeopardy subjected a defendant to 'a hardship so acute and shocking that our polity will not endure it,' *id.,* at 328, did the Fourteenth Amendment apply. The order for a new trial was affirmed. In subsequent appeals from state courts, the Court continued to apply this lesser *Palko* standard. See, *e.g., Brock v. North Carolina,* 344 U. S. 424 (1953)."

We note that the question was posed in *Cichos v. State of Indiana,* 385 U. S. 77 and the writ was dismissed as improvidently granted and rehearing was denied, 385 U. S. 1020. As pointed out in the majority opinion here, "[i]t has, of course, long been a well recognized part of the common law of this State that the rule against double jeopardy forbids a second trial for the same offense after acquittal. * * * But as there was no Maryland constitutional provision protecting against double jeopardy, and so long as under *Palko v. Connecticut, supra,* the Fifth Amendment provision against double jeopardy was not applicable to the states, the right of legislature, by statute, to change the common law rule of double jeopardy and authorize the State to appeal, even from an acquittal, was equally well recognized." (citations omitted.) In

*State v. Adams,* 196 Md. 341, 344, the Court of Appeals held that the prohibition of double jeopardy in the Fifth Amendment was not a requisite of due process under the Fourteenth Amendment. And in *Greathouse v. State,* 5 Md. App. 675, 688-689 this Court found that the common law meaning of double jeopardy as stated in *Hoffman v. State,* 20 Md. 425, 434, was controlling in Maryland. So throughout its judicial history this State followed the common law with regard to double jeopardy as changed from time to time by legislative enactment. *Palko* affirmed its right to do so and *Palko* remained the law until *Benton* when the Supreme Court for the first time endorsed the notion that "the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal to our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment." It was only then that *Palko* was overruled "[i]nsofar as it is inconsistent" with the *Benton* holding. It may well be that *"Palko* represented an approach to basic constitutional rights which (the Supreme) Court's recent decisions have rejected," and that its "roots had thus been cut away years ago." Nonetheless, it was not until 23 June 1969 that the Court said, "We today only recognize the inevitable." *Benton* is, thus, a clear break with the past and I feel that it may and should be prospectively applied.

Accepting the fundamental nature of the guarantee against double jeopardy, I see no compelling reason to give *Benton* full retroactive effect. It provides no effective deterrent against illegal police action, it encompasses no likelihood of unreliability of evidence or coercion of confessions and the fairness of the conduct of the trial is not affected by it. On the contrary I feel that reliance of prosecuting authorities and the courts on the former status of the law and the burden on the administration of justice that would flow from a retroactive application militate in favor of applying it prospectively. It is clear that *Palko* and Supreme Court decisions thereafter did nothing to cause the courts of this State to believe that

the law followed by them was not valid or to doubt that reliance on its continuing validity was not fully justified. And I believe it obvious that the giving of retroactive effect to *Benton* would inevitably result in a heavy burden on the administration of justice in this State. Nor do I find any justification whatever in giving *Benton* limited retroactivity as, for example, applying it to cases pending on appeal at the time its decision was rendered. As the Court of Appeals said in *Schowgurow v. State, supra,* "In many difficult questions of constitutional law arising from criminal trials, the protection of the rights of the individual is weighed against protection of society. Both are basic to ordered liberty." 240 Md. at 134. I am of the feeling that here the dip of the scales favors the protection of society. Thus I would hold that *Benton* applies only to cases in which the trial began after 23 June 1969.