## COUSER *v.* STATE OF MARYLAND

[No. 43, September Term, 1969.]

*Decided January 8, 1970.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Franklin Goldstein* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Edward F. Borgerding, Assistant Attorney General,* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

We are here presented with the issue of double jeopardy.

On April 9, 1969, this Court issued a writ of *certiorari* to the Court of Special Appeals. The petitioner, John Couser, had been convicted under two separate robbery indictments involving the same incident and was sentenced to serve two ten year terms which were to run consecutively. The trial was conducted in the Criminal Court of Baltimore without a jury before Judge Wolf.

A timely appeal was taken to the Court of Special Appeals for the September Term, 1967. Petitioner alleged that the trial court had committed reversible error by striking his testimony covering the unfairness of a line-up from the record. The Court of Special Appeals agreed that the testimony should not have been excluded although the trial court need not believe it. The opinion of Judge Thompson which was filed August 15, 1968, concluded with the words "Judgments Reversed." On September 16, the court issued its mandate in the same unqualified language. Subsequent to this, the court ordered the petitioner transferred to the Baltimore City jail to await a new trial.

On December 13, court appointed counsel and the Deputy State's Attorney for Baltimore City notified the Court of Special Appeals that its mandate made no provision for a new trial but merely stated that the judgments of the lower court had been reversed. On Decem-

ber 16, the court issued an order amending its mandate to read: "Judgments Reversed and Cases Remanded for New Trials."

This Court then issued its writ of *certiorari* in order to consider petitioner's contentions: (1) that the words "Judgments Reversed" in the original mandate preclude a new trial and require an acquittal and (2) that the Court of Special Appeals could not amend its mandate more than three months after its original issuance.

The main issue to be decided is the effect of the first mandate which read "Judgments Reversed." Petitioner contends that this mandate must be equated to an acquittal. If this is the case, he continues, then a change in the mandate which provides for a new trial must violate the Fifth Amendment guarantee against double jeopardy. Unfortunately for the petitioner we do not view the original mandate as having the effect of an acquittal.

The recent case of *Benton v. Maryland,* 395 U. S. 784 (1969), made it clear that the double jeopardy standards of the federal constitution are applicable to the states through the due process clause of the Fourteenth Amendment. Petitioner seems to feel that this decision requires the Court to grant him his freedom. However, even under federal standards, this would only be the case if the original mandate amounted to an acquittal. This proposition is well supported by Maryland law as was stated by the Court of Special Appeals in *State v. Campbell,* 7 Md. App. 538, 539, 256 A. 2d 537 (1969): "It has of course long been a well recognized part of the common law of this State that the rule against double jeopardy forbids a second trial for the same offense after acquittal. *State v. Barger,* 242 Md. 616, 220 A. 2d 304; *Boone v. State,* 3 Md. App. 11, 237 A. 2d 787."

Before considering the effect of the first mandate, the difference between the case at bar and that of *Gray v. State,* 254 Md. 385, 255 A. 2d 5 (1969), should be noted. In *Gray* the issue was whether a reversal because of insufficient evidence and remand for a new trial constituted double jeopardy. In that case Chief Judge Ham-

mond noted that there was a trend in some states to forbid a new trial where there had been a reversal for insufficient evidence although we did conclude that the practice did not constitute double jeopardy. In the present case, if the mandate had clearly remanded for a new trial, there is no doubt that such action would not constitute double jeopardy. The troublesome problems we faced in *Gray*, and which disturbed our sense of logic, are not present where the reversal is for an improper exclusion of petitioner's evidence, rather than for insufficiency in the state's case. The state is not being given a second chance to improve its case and, unlike the situation in *Gray*, there is no reason to say that had the lower court made the proper ruling, the petitioner would have been acquitted. This concept is implicit in the opinion of the Court of Special Appeals where it states: "We have repeatedly held that there is no obligation on the trial judge to believe the testimony of the accused . . . but this does not mean the trial judge is at liberty to strike it from the evidence."

The key issue then is whether the original mandate amounted to an acquittal. If it did, then even if erroneously granted, petitioner would be put twice in jeopardy by a new trial. See *Fong Foo v. United States,* 369 U. S. 141 (1962), and *State v. Campbell, supra.* It is our ruling that where the mandate is ambiguous, one must look to the opinion and other surrounding circumstances to determine the intent of the court. After a review of state and federal cases, we conclude that the expression "Judgments Reversed" does not of itself amount to an acquittal and does not prohibit the interpretation that a new trial is intended.

In *Cobb v. Snow,* 14 Utah 2d 170, 380 P. 2d 457 (1963), the Supreme Court of Utah was faced with an almost identical factual situation to the case at bar.[1] To the pe-

---

1. The provisions of the Utah Code would appear even more favorable to the appellant's contention than the Maryland Rules.
   Utah Code Annotated (1953):
   "77-42-3 Power of Supreme Court on appeal. The court

titioner's contention that a reversal without order for a new trial requires an absolute discharge, the Court answered:

> "We disagree. It is well established that where the defendant has complained that errors vitiate the judgment and it is nullified at his request, he cannot also claim that there is a judgment which precludes further proceedings against him. In the absence of express mandate, it is both necessary and proper to consider the entire context of the prior decision to determine what further proceedings the interests of justice require. Doing so in the instant case makes plain that what petitioner is entitled to is a new trial eliminating the errors which necessitated setting aside the judgment."

*United States v. Reina,* 172 F. Supp. 113 (1959, S.D. N.Y.) is an indication that the federal courts agree with this interpretation. In *Reina,* a conviction against Joseph Valachi was reversed while those of other codefendants were sustained. Valachi was subsequently indicted under the same indictment which he moved to dismiss. The court responded:

> "Valachi has misconceived the effect of the reversal by the Court of Appeals . . . .Pursuant to 28 U.S.C. § 2106,[2] the Court of Appeals is

---

may reverse, affirm or modify the judgment or order appealed from, and may set aside, affirm or modify any or all of the proceedings subsequent to or dependent upon such judgment or order, and may, if proper, order a new trial.

"77-42-4 Reversal of judgment—Discharge of defendant. If a judgment against the defendant is reversed without ordering a new trial, the Supreme Court must, if he is in custody, direct that he be discharged therefrom, or if on bail, that his bail be exonerated, or if money has been deposited instead of bail, that it be refunded to the defendant."

Compare with Maryland Rules 1070; 1071a; 1076a; 1076b and 1076d.

2. "The Supreme Court or any other court of appellate

> empowered to order the dismissal of an indictment upon reversal or to order a new trial if it sees fit . . . It is defendant's contention that because the Court of Appeals failed to specify that it directed a new trial, it follows that the Court of Appeals meant that the indictment should be dismissed as to Valachi though it did not say so. This does not follow from the failure of the Court of Appeals to make a specific direction to dismiss." *Id.* at 115.

See also *United States v. Ewell,* 383 U. S. 116 (1966); *United States v. Tateo,* 377 U. S. 463 (1964); and *Spriggs v. United States,* 225 F. 2d 865 (9th Cir. 1955).

At least one state has held that the reversal of a judgment without direction is tantamount to remand for a new trial. *State v. Percy,* 137 N.W.2d 888, 81 S. D. 519 (1965).

While there is no Maryland criminal case which involves the point in dispute, the civil case of *George v. Farmers and Merchants Bank,* 155 Md. 693, 142 A. 590 (1928), sheds much light on a mandate which contains only a decree of reversal. In this case the Court of Appeals reversed a judgment on the basis that a plea of forgery as a defense to a suit on a note should have been eliminated. The Court stated:

> "* * * The omission of the words 'new trial awarded' . . . was a clerical omission or oversight on the part of the court. This is clearly indicated by the opinions in the previous cases because those opinions show that the purpose and intention of this court was that a new trial

---

jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree or order, or require such further proceedings to be had as may be just under the circumstances." June 25, 1948, c. 646, 62 Stat. 963. Compare Rules 1070 and 1071, Maryland Rules of Procedure.

should be had, in which the defense of forgery would be excluded. This purpose would be entirely frustrated if the judgment and mandate of this court could not be corrected to conform with intent."

We think that *Farmers and Merchants Bank* supports the proposition that an ambiguous mandate may be read in light of the opinion.

We also find compatible language in *Messall v. Merlands Club, Inc.*, 244 Md. 18, 36, 222 A. 2d 627 (1966), a case involving the question of *res judicata*, wherein the appellee contended that: "Only the final judgment itself may be considered in applying the principle of *res judicata*. The opinion, being irrelevant and *obiter dicta*, has no force or effect." This evoked the following response from this Court: "In our judgment a more correct statement of the law will be found in 50 C.J.S. *Judgments* § 726: '* * * [R]ecourse may be had to the opinion of the court in a former action to ascertain what was in the mind of the court when judgment was rendered, especially where there is only a general finding; * * *.' "

From our review of state and federal cases, we feel justified in concluding the mandate was ambiguous. Looking to the body of the opinion, it appears that a new trial was what the court intended. It in effect states that the trial judge must listen to petitioner's testimony in order to determine whether the line-up was constitutional. There is no indication that this could not be done at a new trial. In the brief filed by petitioner's counsel a new trial was the remedy requested. Following the original mandate everyone connected with the case acted as if the mandate had expressly ordered a new trial for the petitioner was kept in jail. This would not have been the case had the court intended to acquit him.

Thus, the original mandate when combined with all the surrounding circumstances was sufficient authority to proceed with a new trial. The later changes served as clarifications of this point. The original mandate cannot

be construed to have been an acquittal and petitioner's claim of double jeopardy must fail. In light of the view which we have taken of the original mandate, it is unnecessary to consider the issue of whether the amendment to the mandate came too late.

*Judgment affirmed, State of Maryland to pay costs.*