## O. F. C. CORPORATION *v.* TURNER ET AL.

[No. 191, September Term, 1961.]

*Decided March 16, 1962.*

The cause was argued before HENDERSON, PRESCOTT, HOR-NEY, MARBURY and SYBERT, JJ.

*John P. Moore* and *John W. Neumann* for appellant.

*R. Edwin Brown,* with whom was *J. Alex Johnson, Jr.,* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

A part of the controversy between two stubborn litigants in this case is before this Court a second time. The present appellant was one of the appellees in the prior case. *Turner v. Washington Suburban Sanitary Comm.,* 221 Md. 494, 158 A. 2d 125.

The appellees (Turner) moved to dismiss the appeal pursuant to Maryland Rules 828 b 1 (c), 828 c 1 and 2 and 830 d 1. At the argument we reserved our ruling on the motion. We find no merit in the motion since the record does not disclose any prejudice to the appellees which would justify dismissal of the appeal. We, therefore, overrule it, but will consider it in the awarding of costs under Rule 828 i and proceed to consider the case on its merits.

The first appeal involved primarily the contentions of the Turners that the trial court erred in failing to give an instruction on punitive damages, and requiring a remittitur. Also involved was the contention of the Turners that the trial judges improperly denied injunctive relief. This Court, on appeal, affirmed the judgment, but remanded the case for further proceedings relative to the issuance of an injunction. With respect to the refusal of the trial judges to grant injunctive relief, the opinion read as follows:

> "We think the trial court erred in denying injunctive relief. Presumably, the award of compensatory damages did not include prospective damages subsequent to the time of the institution of suit (or perhaps the time of trial, we need not now decide which), yet, so long as the channeling and discharge of water is suffered to continue without abatement, there is the strong probability of future damage, and the prospect of future actions at law, which would make equitable relief singularly appropriate. For a

discussion of the problem, see *Spaulding v. Cameron,* 239 P. 2d 625 (Cal.), cited in the *Battisto* case, *supra,* and *Restatement, Torts,* § 930. We are not persuaded by the trial court's statement that there is no way in which the exact quantity of increased flow could be determined. It is enough that there was a material increase. The wrongdoer may not apportion his own negligence. *Laird, Rock & Small, Inc. v. Campbell,* 200 Md. 627, 632. Equity sometimes applies the rule of 'comparative hardship', *Dundalk Holding Co. v. Easter, supra,* but usually in cases of innocent mistake. In cases relating to surface waters, this Court has frequently stated and applied the 'reasonableness of use' rule. *Whitman v. Forney,* 181 Md. 652; *Biberman v. Funkhouser,* 190 Md. 424; *Bishop v. Richard,* 193 Md. 6; *Hancock v. Stull,* 206 Md. 117; *County Comm'rs of Baltimore County v. Hunter,* 207 Md. 171. In some cases the equity court has required the injured party to permit entry upon his lands to make repairs and open drains. On remand, the trial court may properly consider expert testimony as to whether some modification of the storm drainage system might disperse the flow and prevent the wrongful concentration and discharge of surface waters, and whether disposal could reasonably be made at some other point. We do not suggest the exact form of relief, but we think it was not reasonable for the trial court to refuse any injunctive relief against the recurrence of an injury which admittedly caused substantial damages in the past, without a showing of reasonable efforts to correct it."

Upon remand the trial judges appointed Mr. Page Hopkins, a registered engineer, to make an expert analysis of the storm drainage system, and to make recommendations. The factual background upon which Mr. Hopkins was requested to report and analyze is substantially set forth in 221 Md. 494, particularly at pages 497 and 498, which, for the sake of brevity, we will not reiterate.

Following the submission and filing of the Hopkins report, a hearing was had in open court and additional testimony, including that of Mr. Hopkins, was taken. In the course of his testimony Mr. Hopkins stated that prior to the appellant's development operations the rate of run-off was approximately six cubic feet per second of water crossing the Turner property, and after the development, sixteen cubic feet per second, or an increase of ten cubic feet per second as the result of the development.

Mr. Hopkins' finding was that the highest and best use of the Turner property was for subdivision development and this would necessitate the dedication of Loyola Street across the Turner property, connecting with Loyola on the southern side of the Turner land. Accordingly, he recommended that the Turners provide a right of way for an underground pipe, sufficient in size to carry off the "excess" water, and that this underground structure be placed across the Turner property "centered as nearly as possible on the former ditch which, testimony indicated, crossed the property." The estimated cost of this work was $2164, not including allowance for an easement. He testified that the flow of water can not practicably be piped underground and diverted away from the Turner property to Georgia Avenue in the manner in which the sanitary sewer was laid by the Washington Suburban Sanitary Commission.

At the original trial Mr. Joseph C. Rogers, who testified as an expert engineer for the appellees, suggested that an eighteen inch pipe be extended from the present outfall along the north boundary of the Turner property, then south along the west boundary (abutting the property of a public school) and then east to the catch basin on Loyola Street, immediately adjacent to the southern boundary of the Turner property.

The only solutions suggested in the record, other than those just mentioned, were to extend the existing ditch from the eighteen inch pipe directly to the Turner property, and either widen the existing swale across their land, or construct an asphalt (or other substance) open ditch across this property to its southern line. These methods, as well as the Hopkins and

Rogers methods, would necessitate an entry upon the land of the appellees, to which they were unwilling to agree.

The court thereupon ruled from the bench that an injunction would issue, requiring the appellant to stop the flow of surface drainage across the Turner land. This oral ruling was made in open court on February 14, 1961. A proposed form of the order was not presented to the court by the appellees until about two months later. In the meantime, and in anticipation of a decree that would require the appellant to make some modification of the storm drainage system that would carry off the excess water, appellant made studies and prepared drawings and submitted the same to the Department of Public Works for Montgomery County along with a request for permission to brick in the storm drainage catch basin at Wendy Lane, above Loyola Street. This permission was granted by the County, conditioned upon the cost of the work being paid by the appellant, and upon the posting of a bond to indemnify the County for opening up the aforesaid catch basin when future circumstances so required.

At about the same point in time as this permission was granted, on April 26, 1961, the court below signed an injunction decree requiring appellant to cause the cessation of all flow of drainage water "from the lands owned" by the appellant and to do so by August 14, 1961. Appellant immediately moved for a modification of the decree on the grounds: (a) That the decree erroneously required the elimination of all drainage rather than any excess surface waters, (b) that a means to carry off the excess waters had been approved by the Department of Public Works for Montgomery County, and (c) that, in any event, the time specified for compliance with the decree was not adequate.

Upon hearing of the motion to modify, the court below refused to consider the solution approved by the Department of Public Works and adhered to its original position that appellant should be enjoined. It did, however, extend the time for compliance from August 14 to October 14, 1961. It is from that order that this appeal is taken.

The substantial questions presented are whether the trial judges, upon remand, misconstrued the mandate of this Court

in interpreting it as an absolute order to issue an injunction, and if an injunction should be necessary does a proper application of the "reasonableness of use" rule to the facts of this case require that the injunction should be conditioned upon the granting of an easement by the appellees, or permission from them to enter upon their land for the purposes of correcting conditions caused by any excess storm drainage water.

In its early opinion in 221 Md. 494, this Court stated that the trial court erred in denying injunctive relief. The reasoning set forth was to the effect that there was a probability of future damage, and the prospect of future actions at law, "which would make equitable relief singularly appropriate." It was found on the basis of the record then before it that there had been a material increase in the amount of water flowing onto the Turner property, and said:

> "On remand, the trial court may properly consider expert testimony as to whether some modification of the storm drainage system might disperse the flow and prevent the wrongful concentration and discharge of surface waters, and whether disposal could reasonably be made at some other point."

The court below in its order of June 8, 1959, denying the request for injunctive relief, stated that "there is no place for the water to flow except on the plaintiffs' land." The trial judges attempted to apply the "reasonableness of use" rule to the situation, and stated specifically that the court was using "common sense principles based on its view of the property and the evidence introduced at the trial."

At the time of the hearing upon the remand, the lower court stated that it must obey the mandate of this Court and that, therefore, an injunction "must" issue. Apparently the court below felt that it had no alternative to issuing an injunction on the basis of the language used in the opinion. We think in this it clearly misconstrued our mandate.

In the earlier opinion this Court specifically referred to the "reasonableness of use" rule and in a part of the opinion ad-

vised the court below that in some cases equity courts have required the injured party to permit entry upon his lands to make repairs and open drains. In addition, as already noted, the opinion invited the trial court to consider testimony as to whether some modification of the storm drainage system might be made. The force of this Court's direction to the lower court is found in the concluding sentence of the opinion wherein we stated that we thought "it was not reasonable for the trial court to refuse any injunctive relief against the recurrence of an injury which admittedly caused substantial damages in the past, without a showing of reasonable efforts to correct it." The lower court, however, in its ruling from the bench at the hearing following remand, stated that an injunction *must* issue, that it was not going to issue an order requiring Turner to grant O. F. C. Corporation a right of way; that how the work was to be done is up to the defendant corporation, and that they were not going to tell the defendant how it should be done. In this ruling the trial judges indicated that they were concerned with the excess "surface waters that are now running on to the Turner property as the result of the development of the subdivision." The order for injunction, however, issued on April 26, enjoined the appellant "from permitting *any accumulations of mud, gravel and surface waters* to be discharged upon the lands of the appellees from the adjoining lands of the appellant." (Emphasis supplied.)

Mr. Hopkins, the court appointed expert, testified that during the latter part of July and the early part of August 1960, he made several physical inspections of the Turner property, both alone and with the judges of the lower court. At that time he drove over the Turner property and found no evidence of the sogginess earlier complained of nor any physical damage to the property. In regard to the latter he stated that the property had been allowed to grow up in underbrush. We think the testimony of the court's own expert was entitled to careful consideration by that court. *Hancock v. Stull*, 206 Md. 117, 110 A. 2d 522. There is nothing in the evidence to indicate that any mud or debris is now flowing onto the Turner property. The situation seems to be comparable to that in *Bat-*

*tisto v. Perkins,* 210 Md. 542, 124 A. 2d 288, where, after the erection of the houses was completed, the sole remaining problem was that of the additional amount of water as contrasted with the problems that arose during the course of construction when both silt and additional water flowed onto the lower property, particularly after a serious storm.

As indicated above we think, first, the trial judges were clearly in error in misconstruing our mandate to mean that an injunction *must* issue and, second, that injunctive relief, if required, should have been conditioned upon what would be fair and equitable to be required of the respective parties in order to reasonably protect the Turner property from excess flowage of surface water due to the development of the appellant's subdivision property.

We conclude that the order for injunction must be reversed and the case remanded for further proceedings to the end that an appropriate order may be entered adopting one of the solutions presented, or some similar solution that will be fair to both parties. Cf. *Sainato v. Potter,* 222 Md. 263, 159 A. 2d 632. See also *Turner v. Washington Suburban Sanitary Comm., supra,* and cases cited therein. See Annot. 59 A.L.R. 2d 421.

> *Order reversed and case remanded for further proceedings not inconsistent with this opinion; costs to be paid equally by the appellant and the appellees.*