675 A.2d 1003

**Julie G. HARRISON et al.**

v.

**Harry HARRISON et al.**

**No. 1232, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

May 3, 1996.

Benjamin J. Woolery (Richard M. McGill, on the brief), Upper Marlboro, for appellants.

Gerald Solomon, Greenbelt, for appellees.

Before CATHELL, SALMON and EYLER, JJ.

CATHELL, Judge.

This is an appeal from a case involving an audit in a mortgage foreclosure proceeding. The answer to the determinative issue, however, resides in another case. We explain.

Julie G. Harrison, appellant, and Harry C. Harrison, appellee, were previously married. The parties' marital union was ended by a judgment of divorce, dated January 14, 1993. An appeal was taken in that case by Mr. Harrison on two issues, both relating to alimony; the divorce itself was not contested.

Affixed to the opinion that we issued in the prior appeal, *Harrison v. Harrison* [No. 586, 1993 Term, *per curiam*, filed Dec. 17, 1993], was what is sometimes termed a mandate.[1] It stated:

> JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE HALF BY APPELLANT AND ONE HALF BY APPELLEE.

*Harrison*, No. 586, slip op. at 7. The opinion referred to in that judgment or order only addressed the two questions raised in that appeal. The first question concerned the husband's assertion that the trial court failed to consider the effect of a pension distribution on his financial status when it awarded alimony. We agreed. As to that question, we stated in the body of the opinion: "We therefore *vacate* the award of alimony and remand this case for further proceedings consistent with this opinion." *Id.* at 4 (emphasis added). With respect to the second question raised, we held that no error had occurred and stated, "When determining the alimony award on remand, the circuit court will once again be able to

---

1. Technically, the order appended by us to the bottom of our opinion is our judgment. It is often referred to as our mandate. The actual mandate, however, is issued by the Clerk of the Court, generally thirty days after the opinion and judgment is filed. The mandate is designed to incorporate the judgment or order of the Court. Much of the appellate comment on mandates uses the term "mandate," generically, *i.e.*, the comment refers to the order or judgment appended to the opinion and the subsequently issued mandate, collectively, as the "mandate." Although that is technically incorrect, for the purposes of the case *sub judice*, the distinction, though necessary to note, is not determinative. We shall refer herein to mandate in its generic sense, unless the contrary is clear from the context in which it is used.

consider wages from all of appellant's teaching positions." *Id.* at 7. Then, without further comment, the order or judgment, *i.e.,* the "mandate," was appended to that opinion. However, rather than stating, "JUDGMENT AS TO ALIMONY VACATED," which would have reflected what we actually held in the body of the opinion, *i.e.,* "We therefore vacate the award of alimony and remand this case for further proceedings consistent with this opinion," we inadvertently stated, "JUDGMENT REVERSED."

That occurrence gave rise to the problem to be resolved in the case *sub judice.* After the foreclosure sale, appellant argued below, in respect to the distribution of the surplus, that the auditor should have considered the parties to have held the property as tenants by the entireties. Appellant considered the judgment appended to our prior opinion separate from the opinion itself and argued that it resulted in a reversal of the entire judgment, including the divorce. She contended, therefore, that the parties were still married at the time of the audit. Appellees' position, which prevailed before both the auditor and the trial court, was that the parties were divorced, and, as a result of that divorce, the tenancy became, by operation of law, a tenancy in common.[2]

Our review here is thus dependent upon our construction of our opinion, judgment, and mandate in the parties' prior divorce case. If we determine that the divorce itself was unaffected, then appellees prevail in the case *sub judice* and we must affirm. If we determine that the prior judgment of divorce was reversed, then appellants prevail, and we must reverse and remand. Hence, the issues that resolve the instant appeal and answer the questions raised thereby are not the questions stated by appellant, but are:

 1. What is the effect of an appellate court's judgment, order, or mandate?

---

**2.** The nature of the tenancy, apparently, determines the disbursement of the surplus from the sale. It is unnecessary for us to address the particulars of the various possible disbursements.

2. Can an issue or decision not presented on appeal, *e.g.,* the judgment of divorce, generally be reversed by an appellate court that uses the type of order (or mandate) used in the prior proceeding?

### 1.

**What is the effect of an appellate court's judgment, order, or mandate?**

In respect to the somewhat unique circumstances of these two cases, the first issue above has not been extensively addressed in Maryland. Much of what Maryland law there appears to be is often intertwined with our cases that address the second question, although, even those cases do not directly answer the exact question presented here. We shall address those cases in the resolution of our question two.

A review of certain Maryland Rules is a helpful starting point for our discussion, though not completely determinative. Maryland Rule 8–606, **Mandate,** provides:

> **(a) To Evidence Order of the Court.**—Any disposition of an appeal, including a voluntary dismissal, shall be evidenced by the mandate of the Court, which shall be certified by the Clerk under the seal of the Court and shall constitute the judgment of the Court.[3]
>
> . . . .

---

**3.** This language permits both an interpretation that a mandate is evidence of our disposition and that it is a judgment. Under the practice in this State, the order or judgment containing our disposition affixed to the end of our opinions is incorporated into the "mandate" subsequently issued by the Clerk of our Court. Thus, that order or judgment "evidenced by the mandate" becomes a part of the "mandate." We are here primarily concerned with the judgments or orders we affix to our opinions, not the formal "mandate" subsequently issued by the Clerk, even though our judgment is incorporated in the Clerk's mandate. We emphasize that the case at bar is not a case in which our judgment or order is in conflict with the "mandate" later issued by the Clerk. It is a case in which our prior opinion and judgment are alleged to be in conflict, and in which it is further alleged that our prior judgment prevails over the opinion itself.

**(e) Effect of Mandate.**—Upon receipt of the mandate, the clerk of the lower court shall enter it promptly on the docket and the lower court shall proceed in accordance with its terms.

Maryland Rule 8–604, Disposition, subsection (d), **Remand,** provides:

(1) *Generally.*—If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment ... the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand *and the opinion upon which the order is based are conclusive as to the points decided.* [Emphasis added.]

*See* Benson E. Legg et al., *Maryland Appellate Practice* 180–81 (MICPEL, 1989) (noting that "[a] mandate is, therefore, formal *evidence* of the final action of the appellate court") (emphasis added).

We note first the brief comment made by the Court of Appeals in its recent case, *Powell v. Maryland Aviation Admin.,* 336 Md. 210, 222, 647 A.2d 437 (1994): "Ordinarily, a reversal and remand after trial for error in the trial or decision results in a retrial, *unless the appellate opinion or mandate specifically limits the proceedings on remand."* (Emphasis added.) The case of *Klopfer v. Werber,* 264 Md. 419, 286 A.2d 776 (1972), while primarily concerned with procedural matters related to the payment of costs, also discussed orders and mandates, albeit briefly. Referring to a predecessor rule, the Court noted:

Rule 876 a makes the mandate the *sole formal evidence* of the final actions of this Court in every case....

Rule 876 d says: "When the mandate has been transmitted the lower court shall proceed according to the tenor and directions thereof."

*Id.* at 421–22, 286 A.2d 776 (emphasis added).

The case of *O.F.C. Corp. v. Turner,* 228 Md. 105, 179 A.2d 366 (1962), as relevant here, involved a prior judgment of the

Court of Appeals that affirmed the underlying judgment but remanded the case. The Court of Appeals, in the subsequent case, in explaining its intent in regard to the prior remand, quoted extensively from its prior opinion. It identified one of the substantial questions then before it as whether, upon the remand in the previous appeal, the trial court had "misconstrued the mandate of this Court." *Id.* at 109, 179 A.2d 366. The Court noted that the trial court had thought it had no alternative except to issue an injunction due to the language used in the mandate. The Court discussed and interpreted its prior opinion to support its holding that the mandate had been misconstrued. In doing so, the Court did not differentiate between the opinion and the mandate, considering them one and the same. *Id.* at 110–11, 179 A.2d 366; *see also Union Trust Co. v. Harrisons' Nurseries, Inc.*, 181 Md. 291, 29 A.2d 668 (1943) (where the court's opinion was not distinguished from the mandate); *Washington County Water Co. v. Mayor and Council of Hagerstown*, 122 Md. 252, 254–55, 89 A. 500 (1914) (*Washington County II* ).

In *Washington County II*, the Court of Appeals noted that appellant was raising the following issue: "Schedule B . . . is not [in] compliance with the mandate of this Court in the former appeal. The contention is, that this Court said Schedule B itself should be filed." 122 Md. at 254, 89 A. 500. The Court obviously considered its prior opinion to be part of the mandate, because the prior mandate simply stated, *"Order reversed and cause remanded, with costs to the appellant." Washington County Water Co. v. Mayor and Council of Hagerstown*, 116 Md. 497, 511, 82 A. 826 (1911) (*Washington County I* ). The *Washington County II* Court then noted that "it is true that expression was used," 122 Md. at 254, 89 A. 500, but nevertheless went on to hold that what had occurred in that case in respect to Schedule B "is a full compliance with the expression in the opinion." *Id.* It is clear that the Court considered the mandate *and* its opinion to be the judgment of the Court; it did not distinguish between them.

In the more recent case of *Balducci v. Eberly*, 304 Md. 664, 669, 500 A.2d 1042 (1985), the Court of Appeals construed a

prior judgment or mandate from this Court, rendered in *Balducci v. Eberly* [No. 822, 1982 Term, *per curiam*, filed Feb. 15, 1983], that read: "Judgment Reversed. Orders of May 5, 1982 vacated. Appellees to pay the costs." The Court also noted that our mandate did not, by its terms, award a new trial. The Court noted further that the appellant contended that our prior "opinion vacating the injunction was a final and conclusive judgment on the merits." 304 Md. at 669, 500 A.2d 1042. The Court of Appeals disagreed. Apparently referring to the term "mandate" generically, the Court stated:

> [T]he key issue ... [is] whether the ... mandate contemplated a grant of a new trial....
>
> As a preliminary matter, we find that the ... mandate is ambiguous. Where a mandate is ambiguous, one must look to the opinion and other surrounding circumstances....
>
> In examining the expression "Judgment Reversed," we recognize that such an expression in and of itself does not prohibit the interpretation that a new trial is intended.

*Id.* at 669–70, 500 A.2d 1042 (footnote omitted). The *Balducci* Court, after citing *Couser v. State*, 256 Md. 393, 260 A.2d 334 (1970), discussed *infra*, regarding the effect of "Judgment Reversed" language in a criminal case, and after discussing other cases, including *George v. Farmers' & Merchants' Nat'l Bank*, 155 Md. 693, 142 A. 590 (1928), discussed *infra*, noted that, in *Messall v. Merlands Club, Inc.*, 244 Md. 18, 37, 222 A.2d 627 (1966), *cert. denied*, 386 U.S. 1009, 87 S.Ct. 1349, 18 L.Ed.2d 435 (1967), appellee had contended that "[o]nly the final judgment itself may be considered.... The opinion, being irrelevant and *obiter dicta*, has no force or effect." 304 Md. at 672, 500 A.2d 1042. The *Balducci* Court then noted that, in *Messall*, it had rejected that contention:

> "In our judgment a more correct statement of the law will be (that): '... [R]ecourse may be had to the opinion of the court in a former action to ascertain what was in the mind of the court when judgment was rendered, especially where there is only a general finding.'"

*Id.* (citation omitted). The Court then held: "The ambiguous mandate [judgment] before us may be read in light of its opinion and the surrounding circumstances of the case as a whole." *Id.*

In *Blue Cross of Maryland, Inc. v. Franklin Square Hosp.,* 277 Md. 93, 113, 352 A.2d 798 (1976) (*Franklin I* ), the judgment or order simply stated: *"Case remanded to the Circuit Court . . . for modification of its order in accordance with this opinion."* The effect of that judgment (mandate) was at issue in *Health Servs. Cost Review Comm'n v. Franklin Square Hosp.,* 280 Md. 233, 234, .372 A.2d 1051 (1977) (*Franklin II* ), wherein the Court of Appeals noted that the question was whether the modified judgment of the trial court was "consistent with our mandate in the prior appeal." As is evident, that mandate required modification of the trial court's judgment in accordance with the Court of Appeals's opinion. The *Franklin II* Court treated the *Franklin I* opinion as the mandate. The Court noted that, in the prior appeal, none of the parties had challenged a particular "portion of the judgment." *Id.* at 236, 372 A.2d 1051. It then discussed portions of its prior opinion referring to them as part of its prior mandate. It noted that the trial court judgment in *Franklin II* "does preclude the Commission from reviewing certain cost factors." *Id.* at 240–41, 372 A.2d 1051. The Court then held that such preclusion "is inconsistent with our mandate in [*Franklin I* ]." *Id.* at 241, 372 A.2d 1051. The actual judgment, and the resulting *Franklin I* mandate made no mention of any cost factors. *Id.* at 240–41, 372 A.2d 1051. The new trial court judgment, in *Franklin II,* was actually inconsistent with the prior appellate opinion, not the judgment, *i.e.,* the mandate affixed to the end of the opinion. ·

In *Chayt v. Board of Zoning Appeals,* 177 Md. 426, 436, 9 A.2d 747 (1939) (*Chayt I* ), the order or judgment affixed to the bottom of the opinion merely stated, *"Order reversed, and case remanded for passage of an order in accordance with this opinion."* In the body of that opinion, the Court of Appeals provided that the case be remanded "for passage of an order restraining the use as proposed, because not permit-

ted under the Zoning Ordinance." *Id.* On remand, the trial court restrained the use "pursuant to a [granted] permit." In a subsequent appeal, *Chayt v. Board of Zoning Appeals*, 178 Md. 400, 402–03, 13 A.2d 614 (1940) (*Chayt II* ), the Court of Appeals, in resolving what it had intended by its "mandate," extensively discussed the opinion that accompanied the mandate (or the judgment) in *Chayt I*. It decided the appeal, not upon the actual mandate in *Chayt I*, but upon its underlying opinion. The Court of Appeals, in *Chayt II*, often made no distinction between its prior opinion and its prior mandate, referring to what it had said in the *Chayt I* opinion as "the mandate," "limiting the effect of the mandate," "affected by the mandate," "restricts the purpose of the mandate," as well as, on occasion, referring to the "decision and mandate of the court." 178 Md. at 403–04, 13 A.2d 614 *passim.*

In *George v. Farmers' & Merchants' Nat'l Bank, supra,* 155 Md. at 695, 142 A. 590, the Court of Appeals, in a prior appeal in the same case, *Farmers' & Merchants' Nat'l Bank v. Harper*, 151 Md. 358, 363, 137 A. 702 (1927), had, after its opinion, issued a mandate that, as relevant here, stated: *"Judgment reversed, with costs to the appellant."* When the mandate was received in the circuit court, the case was placed on the trial court's docket for trial. Among the issues the Court of Appeals addressed in the subsequent appeal was whether the case had been properly before the trial court for retrial. It noted that the judgment rendered by it in the prior case had not included an order for retrial. 155 Md. at 696, 142 A. 590. It then acknowledged that the opinion (as opposed to the mandate) that it had rendered had, in effect, stated that "the case should be retried with the defense of forgery eliminated." *Id.* at 697, 142 A. 590. It then held:

> [W]e find no error in the lower court, upon receipt of the mandate, reinstating the case on the trial docket and proceeding with the trial thereof, in accordance with the views expressed in the opinions of this court. The omission of the words "new trial awarded," or language indicating a *procedendo,* was a clerical omission or oversight on the part of the court.

*Id.* The Court went on to discuss the concept of clerical mistake:

> The court . . . may correct or amend clerical errors and misprisions of its officers. . . . The term "clerical error" as here used must not be taken in too narrow a sense. It includes not only errors made by the clerk in entering the judgment, but also those mistakes apparent on the record, whether made by the court or counsel during the progress of the case, which cannot reasonably be attributed to the exercise of judicial consideration or discretion.

Id. at 697–98, 142 A. 590 (citations omitted).

■■■ A similar result has been reached in criminal cases. For example, in *Couser v. State, supra,* 256 Md. at 395, 260 A.2d 334, the prior judgment rendered by this Court provided, "Judgments Reversed." The mandate that subsequently issued used the same language. Later, we amended the mandate to read, "Judgments Reversed and Case Remanded for New Trial." The effect of our first judgment and corresponding mandate was the primary issue before the Court of Appeals. Couser alleged that he was being placed in jeopardy by reason of the new trial. He argued that the original language used, "Judgment Reversed," precluded a new trial and required an acquittal; a new trial would violate the Fifth Amendment's prohibition against double jeopardy. The Court of Appeals first noted that it did "not view the original mandate as having the effect of an acquittal." *Id.* After discussing the effect of a reversal due to insufficient evidence and its effect on the State's ability to retry a criminal case, the Court held:

> It is our ruling that where the mandate is ambiguous, one must look to the opinion and other surrounding circumstances to determine the intent of the court. . . . [W]e conclude that the expression "Judgments Reversed" does not of itself amount to an acquittal and does not prohibit the interpretation that a new trial is intended.

*Id.* at 396, 260 A.2d 334. Citing *George, supra,* 155 Md. 693, 142 A. 590, it noted that that civil case "supports the proposi-

tion that an ambiguous mandate may be read in light of the opinion." 256 Md. at 399, 260 A.2d 334. After discussing *Messall, supra,* 244 Md. 18, 222 A.2d 627, the Court explained:

[W]e feel justified in concluding the mandate was ambiguous. Looking to the body of the opinion, it appears that a new trial was what the court intended.[4]

256 Md. at 399, 260 A.2d 334. The Court then distinguished reversals in criminal cases based upon "sufficiency of evidence" issues, referring to *Gray v. State,* 254 Md. 385, 255 A.2d 5 (1969), *cert. denied,* 397 U.S. 944, 90 S.Ct. 961, 25 L.Ed.2d 126 (1970).

While the Maryland cases and rules describe generally the importance of the court's mandate and the procedures to be followed by the trial court—*i.e.,* "in accordance with the tenor and direction thereof"—they have not clearly described exactly what comprises the complete "order" or "judgment" of the court. As we construe these rules, and the cases discussing them, it is apparent that, in Maryland, the opinion, at the very least, may be an integral part of the appellate court's order or mandate when that order or mandate provides for a remand for proceedings consistent with the opinion. Moreover, when it is apparent from the opinion itself that a simplified "order" or mandate, *e.g.,* "Judgment Reversed," is ambiguous, then the opinion may be referred to and considered an integral part of that mandate. There may be, as we discuss *infra,* many types of unitary judgments or mandates, as opposed to multiple, severable parts of judgments, in which

---

**4.** Thus, in criminal cases a "bare-bones" "Judgment Reversed" mandate, without more, generally permits the prosecutor to consider whether the case should be, or can be, retried, leaving the defense to determine, if the prosecutor decides to retry the case, whether a retrial can be challenged. Generally, such a bare-bones mandate in a criminal case returns the parties to the *status quo ante.* At that point, if double jeopardy issues are generated by the first trial and appeal, *i.e.,* a reversal on sufficiency grounds, presumably such a defense would be presented at the second trial, but, unless such a defense were to be made, we do not perceive that, even in sufficiency cases, a prosecutor would be automatically barred from initiating a new trial. It might be foolish, it would probably be unsuccessful if challenged, but it would not be forbidden.

such a "Judgment Reversed" order or mandate would not be ambiguous and there would be no need to refer to the opinion. Generally, however, any direction in an order or mandate that proceedings on remand are to be consistent with the opinion would necessarily require the opinion to be considered as an integral part of the judgment. This position is consistent with the law of mandates as stated by most, but not all, of the few foreign jurisdictions that have squarely addressed the issue.

We initially note that, in *Board of Regents v. Harriman,* 857 S.W.2d 445 (Mo.Ct.App.1993), the Missouri intermediate appellate court was presented with an issue relating to the function of a mandate. The court noted:

> [Respondent] contends that the trial court lacked jurisdiction to rule on [Petitioner's] motion for judgment.... It contends that "the court's mandate [in the prior appeal] to the trial court only provided for reinstatement of the default judgment...." [Respondent] argues that the trial court was without authority, or "jurisdiction," to take any action ... other than was necessary "for reinstatement of the default judgment...."

*Id.* at 449. The court continued:

> [Respondent] ... did not discuss the function that a mandate serves.
>
> Where the judgment of an appellate court calls for the remand ... for further action the judgment is not self-executing but must be certified back to the trial court for execution. This is done in this state by what is called the mandate.... *The mandate serves the purpose of communicating the judgment to the lower court....*

*Id.* (citations omitted, emphasis added).

*Lewelling v. Bosworth,* 840 S.W.2d 640, 642 (Tex.Ct.App. 1992), was a "child conservatorship case" involving a mother's *habeas corpus* proceeding to secure custody or possession of a child. A previous appeal had been taken in the proceedings. The court discussed the effect of the previous appellate mandate:

[B]oth parties assume that the supreme court mandate is the order that gave Mother a right of possession of the child. We disagree with this assumption.

A mandate is the official notice of the action of the appellate court, directed to the court below, advising it of the action of the appellate court and directing it to have its judgment duly recognized, obeyed, and executed.

The case of *D.E.J. v. G.H.B.*, 631 S.W.2d 113 (Mo.Ct.App. 1982), involved the termination of parental rights. A previous appeal had been taken and, in subsequent proceedings, the effect of the prior mandate was an issue. The prior mandate stated that the trial court's decision was "reversed, annulled and for naught held and esteemed the judgments ... and that the appellant be restored to all things lost ... and adjudged that the cause be remanded with directions for further proceedings in conformity with the opinion of this court." *Id.* at 117 (emphasis omitted). The court noted that, on remand, the mother requested a new judge on the ground that the mandate restored to her "all things lost." *Id.* (emphasis omitted). The court responded:

The mandate, however, *is not the judgment; the appeals opinion is the judgment.* The mandate merely constitutes the official communication of the appellate judgment to the subordinate court. When the terms of mandate remand the cause to the subordinate tribunal, the effect is to revest jurisdiction in that court to take the acts directed. *That direction is determined not only by the terms of the mandate but also by the opinion of the appeals court which the mandate integrates.*

. . . .

... Our *opinion* defines exactly the appellate judgment rendered and the scope of the directions to the juvenile court on remand.

*Id.* at 117–18 (citations omitted, some emphasis added); *see also State ex rel. Means v. Randall*, 764 S.W.2d 120, 123 (Mo.Ct.App.1988). In *Dalton v. Johnson*, 341 S.W.2d 596, 597–98 (Mo.Ct.App.1960), the Missouri intermediate appellate

court again opined, quoting from *State ex rel. McGrew Coal Co. v. Ragland*, 339 Mo. 452, 97 S.W.2d 113 (1936):

> Such an order [mandate] is not itself a decree....
>
> ....
>
> ... [A] certified copy of the opinion accompanies the mandate. In certain instances—for example when the judgment is reversed and the cause remanded with directions to proceed as directed in the opinion ..., and in other conceivable situation where the opinion might properly be considered—the opinion by such reference made to it becomes pro tanto incorporated with the judgment or mandate.... [I]n such cases, and many like them in that respect, they are expressly distinguished from "simple reversals and remands," as they are termed. The obvious distinction lies in the fact that the opinion in this latter class [simple reversals or remand] serves no interpretive function or aidful purpose....
>
> ....
>
> ... [A mandate] is not a judgment or decree but a notification of a judgment.
>
> ....
>
> Under the law ... such an opinion is part of such mandate.

*Id.* at 598–600. Similarly, in *Moore v. Beck*, 730 S.W.2d 538, 540 (Mo.1987) (*en banc*), the Missouri Supreme Court stated, "The mandate, however, is not the judgment; the appeals opinion is the judgment. The mandate merely constitutes the official communication of the appellate judgment." (Citation omitted.) The *Moore* court went on to examine the "opinion," and not the mandate in the prior case. *See Moss v. Pennsylvania R.R.*, 68 F.Supp. 740, 741 (N.D.Ind.) ("In construing the mandate of the Circuit Court of Appeals, the opinion may and should be considered because it is a part of the mandate." (citation omitted)), *aff'd*, 158 F.2d 86 (7th Cir.1946), *and cert. denied*, 330 U.S. 849, 67 S.Ct. 1093, 91 L.Ed. 1293 (1947); *Tierney v. Tierney*, 290 So.2d 136, 137 (Fla.Dist.Ct.App.1974); *State ex rel. Kansas City v. Public Serv. Comm'n*, 360 Mo.

339, 228 S.W.2d 738, 741 (1950) ("A mandate of an appellate court serves the purpose of communicating its judgment to a lower court."); *Abrams v. Scott*, 357 Mo. 937, 211 S.W.2d 718, 721 (1948); *In re Disciplinary Action Against Larson*, 485 N.W.2d 345, 348 n. 2 (N.D.1992) ("A mandate is the official mode of communicating the judgment . . . to a lower court. It is the vehicle for revesting jurisdiction in the lower court.") (citation omitted).

The Missouri court, in *Byrd v. Brown*, 641 S.W.2d 163, 166 (Mo.Ct.App.1982) (*en banc*), distinguished between reversals when the mandate does not direct a remand and reversals— when it does. In *Byrd*, the mandate at issue simply read: "[T]he Court . . . does consider and adjudge that the order . . . be reversed, annulled and for naught held and esteemed." In its analysis, the court opined that "[a]n outright reversal, however, does not operate as a remand; the effect of a[n] . . . unqualified reversal . . . is to nullify it completely and to leave the case standing as if no such judgment . . . had ever been rendered." *Id.* at 168. (In this case, the Missouri court may have been considering a mandate resulting from what we hereafter describe as a unitary judgment.) *See also Missouri Pub. Serv. Co. v. Platte–Clay Elec. Co–op.*, 435 S.W.2d 350, 353–54 (Mo.1968); *Save the Trains Assoc. v. Chicago & N.W. Ry.*, 168 Neb. 180, 95 N.W.2d 334, 336 (1959); *Turner v. Bragg*, 114 Vt. 334, 44 A.2d 548, 549 (1945) ("A mandate is '[t]he judgment of an Appellate Court sent down to the court whose proceedings have been reviewed.'") (citation omitted); *In re Estate of Kokesh*, 664 P.2d 127, 129 (Wyo.1983); *Sanders v. Gregory*, 652 P.2d 25, 26 (Wyo.1982).

In a recent Colorado workers' compensation case, the Colorado appellate court, in *Hrabczuk v. John Lucas Landscaping*, 888 P.2d 367 (Colo.Ct.App.1994), noted that it had previously rendered an opinion in which it had dismissed the prior appeal but had included in its opinion a directive that the case be "remanded . . . to the Panel 'for consideration of the request for attorney fees.'" *Id.* at 368. The "mandate" that was subsequently issued by the clerk of the court differed, however, in that it stated that the case was "remanded to [the

Industrial Claim Appeals Office] for attorney's fees." When the Panel reheard the case, it concluded, because of the language of the "mandate," that it had to award the attorney's fees even though the opinion required it only to "reconsider" them. The court held, in the subsequent appeal:

The mandate [is] ... intended to establish the finality of the judgment. . . .

... [T]he function of the mandate is to establish the finality of the court's judgment, to restore jurisdiction in the tribunal from which the appeal ... is taken, and to communicate the court's judgment to that tribunal.

In other jurisdictions some courts hold that, in the event of a conflict, the mandate must give way to the opinion. See *Albuquerque Broadcasting Co. v. Bureau of Revenue*, 54 N.M. 133, 215 P.2d 819 (1950); *Sherrill v. Sovereign Camp, W.O.W.*, 184 Okla. 204, 86 P.2d 295 (1938). Others hold that the mandate governs. See *Aguilar v. Safeway Ins. Co.*, 221 Ill.App.3d 1095, 164 Ill.Dec. 418, 582 N.E.2d 1362 (1991) (the correctness of a trial court's action is to be determined from the appellate court's mandate, as opposed to the ... opinion unless the mandate directs the trial court to proceed in conformity with the opinion).

Considering the function of the mandate ..., we conclude that the better view is that the directions on remand set out in the order are controlling over language contained in mandate form issued by the clerk's office of this court. Thus, the Panel was not required to award fees.

*Id.* at 368–69 (some citations omitted).

In *Tucson Gas & Elec. Co. v. Superior Court*, 9 Ariz.App. 210, 450 P.2d 722, 723 (1969), the relevant portion of the appellate court's prior opinion [5] stated: "[T]he judgment below be reversed ... to permit the real parties in interest ... to file an amended complaint ... which amended pleading will have relation back to the filing of the original complaint." The

---

**5.** It was a rehearing opinion. There had been a previous opinion and mandate.

mandate that subsequently issued, however, stated, in relevant part: "[T]he judgment ... on appeal be, and the same is hereby reversed *with direction to enter judgment for the defendant in this action,* in accordance with the opinion of this court filed January 31, 1968." *Id.* The appellate court then noted that the trial court "did not concern itself with the verbiage of the mandate issued by this court, but rather with the language of the two appellate opinions rendered." *Id.* It then stated:

> The mandate ... appears ... to be ambiguous and confusing, and, at worst, to be directly contrary to the intent of the rehearing opinion....
>
> . . . .
>
> In the country as a whole, there is a split of authority as to which document controls when there is an inconsistency between the mandate and the opinion of an appellate court.

*Id.* at 723–24. Then the court noted that, in *Sherrill v. Sovereign Camp, W.O.W.,* 184 Okla. 204, 86 P.2d 295 (1938), the *Sherrill* court had acknowledged that mandates were often prepared by the clerk. The Arizona court then stated:

> The embarrassingly inadequate mandate issued by this court in this appeal demonstrates that this observation is pertinent to the practice followed until now in this division of this court.

450 P.2d at 724 (footnote omitted). The court then recalled its prior mandate for purposes of conforming the mandate to the dictates of its prior opinion.

In *Sherrill,* the opinion in the prior case concluded with the following judgment or order: "For the reasons given, the cause should be reversed, and it is so ordered." 86 P.2d at 296. Thereafter, the appellate court's clerk prepared a fill-in-the-blank "mandate" that, as filled in, stated:

> Now, therefore, you are hereby commanded to cause such Reversal to show of record in your court and to issue such process and take such other and further action as may be in accord with right and justice and said opinion.

*Id.* During the new proceedings before the trial court, a party convinced that court to follow the opinion and judgment of the appellate court instead of taking action that would have been permitted under the literal language of the mandate prepared by the clerk. On appeal, the court noted that

> a mandate is but the formal advice and order of the Supreme Court to the trial court, and that the mandate is the official mode of communicating the judgment ... to the lower court.
>
> ... [W]e are unable to agree with plaintiff's contention that the court should have followed the mandate instead of the opinion. The opinion is controlling.

*Id.* (citations omitted).

To the contrary, we note the dictum in *In re Compensation of Castro*, 60 Or.App. 112, 652 P.2d 1286, 1287 (1982), *petition for review denied*, 294 Or. 491, 660 P.2d 681 (1983): "The general rule is ... that the *mandate* is the order and that the court's opinion merely gives the reason supporting the order." In *Castro*, the concern was not, however, with the thrust of the mandate, but with the timing of its issuance. The court had previously noted, for timing purposes, that the date of the issuance of the mandate, and not the date of the filing of the opinion, was dispositive. *See also Busser v. Noble*, 32 Ill. App.2d 181, 177 N.E.2d 251 (1961) (also concerning the timing of the issuance of the mandate); *Aguilar, supra; Jones v. Board of Fire & Police Comm'rs*, 204 Ill.App.3d 1004, 150 Ill.Dec. 372, 376, 562 N.E.2d 1175, 1179 (1990); *M. & M. Realty Co. v. Industrial Comm'n*, 267 Wis. 52, 64 N.W.2d 413, 416 (1954) (generally, if mandate and opinion are inconsistent, mandate controls). However, even the Illinois cases hold that, if the mandate directly requires and directs a remand consistent with the views the court "expressed in the opinion," then the proceedings on remand must be consistent with the opinion. *Tubbs v. Home Builders Inv. Corp.*, 330 Ill.App. 473, 71 N.E.2d 913, 918–19 (1947). *Compare Mancuso v. Beach*, 187 Ill.App.3d 388, 135 Ill.Dec. 21, 23, 543 N.E.2d 256, 258 (1989) (where mandate dictated reversal).

Our review of the foreign jurisdiction cases indicates that the appellate courts of Illinois, and, perhaps, those of Wisconsin and Oregon, strictly construe the actual mandate as controlling in all instances. Conversely, it appears that Missouri, Vermont, Texas, North Dakota, Florida, Wyoming, Nebraska, Colorado, Arizona, and Oklahoma adhere at least to the view that, when a mandate is ambiguous, the opinion is to be considered and becomes a part of the mandate and further, that, if there is a conflict, the terms of the opinion control. Moreover, the majority view appears to adopt a broad concept of ambiguousness, to the extent that often the opinion is first examined and, if it in any way limits or explains the mandate, the mandate is deemed ambiguous.

The Maryland cases we have discussed appear to be closer to the majority view. Moreover, we perceive that the majority view is the more logical position. The minority view exalts form over substance. We shall, therefore, adhere generally to the position taken by a majority of the states. We shall discuss further, however, certain distinctions in respect to the types of judgments by trial courts and the types of appeals taken therefrom that may further refine the types of mandates—and their effects.

The original case of *Harrison v. Harrison* concerned, as we have said, multiple issues, including divorce, alimony, marital property, and custody. In such a case, when judgment is rendered by the trial court, that court is rendering what can be termed a judgment in multiple parts.[6] Although, ordinarily, in any appeal, the entire record comes before this Court and all aspects of the case are subject to appellate review, the parties are free to limit that review by limiting the issues raised in their briefs. Generally, we shall

---

6. There are cases in which more than one judgment, as distinguished from a judgment with multiple parts, exists. They might include cases involving multiple plaintiffs or defendants, cross- or counterclaims, and third-party claims. In those cases, actual multiple judgments may be rendered, rather than a judgment addressing multiple parts or multiple issues. It is of course possible that one of several multiple judgments might itself consist of multiple parts.

not decide issues that have not been raised, as we further explain, *infra*. Thus, in a multipartite judgment—at least one in which the parts are independent or semi-independent and can stand or fall on their own—if no party chooses to contest an independent or semi-independent part of that judgment, we shall regard the parties as having effectively waived any claim of error with respect to that part. In such a situation, it is as though that part were not on appeal; technically, it is on appeal, but we would have no occasion to disturb it. Whatever our disposition of that part of the judgment properly presented for our review and actually addressed by us, our decision would have no effect on the parts of the judgment not challenged in the appeal, unless we expressly, or by necessary implication, indicate otherwise.

In contrast to judgments involving multiple, severable parts, there are cases that result in what may be referred to as unitary judgments. These would include one issue cases; there is nothing that can be severed. In a unitary proceeding, there is either only one issue, or the issues to be addressed are indivisible in character. The issue or indivisible issues are a cohesive unit, and a single judgment or order by a trial court resolves the entire case. An appeal of a unitary judgment may challenge more than one ruling for which error is claimed, but the result affirms, reverses, vacates, or remands the entire judgment. A "bare-bones" reversal of such a unitary judgment reverses the entire case, and, depending upon the circumstances of a particular case, it may or may not be retried.[7]

It is possible for a domestic proceeding to result in either a judgment containing severable parts or a unitary judgment. When only a single issue is raised before the trial court, *e.g.*, a petition for divorce only, it may result in a unitary judgment. If, however, in addition to the divorce, issues such as alimony, child custody, child visitation, child

---

7. A "bare-bones" reversal is the reversal of a unitary judgment in which neither the *opinion* nor the *mandate* can be construed to permit a remand for further proceedings.

support, property classification, marital property determination, monetary awards, and attorney's fees are also raised, the trial court, of necessity, must generally resolve all the issues by rendering a judgment with multiple parts.[8] Those respective parts of judgments final when entered below, are severed and become final for all purposes when they are either not presented, *i.e.,* withdrawn from appellate review, or are affirmed on appeal. See generally 5 Am.Jur.2d *Appeal & Error* §§ 724, 953 (1962):

> Where only part of [a] decision ... is appealed from, the ... review is ordinarily limited to that part ... and the ... court is not concerned with ... that part which has remained unchallenged ... except where the part appealed from ... cannot be severed from the part not appealed from.
>
> . . . .
>
> ... [W]here the error relates only to separable issues ... [the trial court's judgments as to those separable issues] may be reversed as to those issues without reversing the judgment in its entirety. *The unaffected parts must be deemed a final judgment....* [Footnotes omitted.]

## CONCLUSION AS TO *OUR* QUESTION NO. 1

■■■■■ In the prior case, the divorce part of the judgment was not contested on appeal. It was thus severed from the remaining parts of the judgment and became final for all practical purposes thirty days after its entry on the docket, even though other parts of the judgment were in the process of being subjected to appellate review. We further conclude, based upon the Maryland Rules and case law, and those foreign cases that we have described, that, when an order or judgment (sometimes erroneously referred to as our mandate), other than a "bare-bones" reversal, appended to one of our civil opinions and the "mandate" that subsequently issues—although providing for a reversal, also directs or per-

---

**8.** There, of course, are other types of unitary or multiple issue proceedings.

mits a remand for further proceedings consistent with the opinion, the opinion may define the extent and nature of the order, judgment, or mandate *as to the issues raised on appeal.* Under such circumstances, the opinion becomes a part of our mandate, in that it must be considered in order for the trial court to determine what we have directed it to do.

Generally, as we shall indicate in our discussion of the second question, a reversal may not, in any event, operate to reverse any part of a decree or judgment of a trial judge as to an issue not presented or raised on appeal.

### 2.

**Can an issue or decision not presented on appeal, *e.g.*, the judgment of divorce, generally be reversed by an appellate court that uses the type of order (or mandate) used in the prior proceeding?**

As we have indicated, no complaint was made by either party as to the divorce itself. The only issues raised in the prior appeal were issues collateral to the divorce, *i.e.*, alimony issues.

At one point, it was thought that the only issues reviewable on appeal were those issues stated in the petition or order for appeal. In *Carter v. State*, 286 Md. 649, 651, 408 A.2d 1335 (1979), Carter's notice of appeal requested the clerk to enter an appeal "on the constitutional question relating to Speedy Trials." The Court of Appeals held that "limiting the breadth of the appeal in this manner opens for review in an appellate court only the issue or issues mentioned in the requested order." 286 Md. at 651, 408 A.2d 1335. This limitation is no longer correct. *Carter* was subsequently and expressly overruled in *B & K Rentals & Sales Co. v. Universal Leaf Tobacco Co.*, 319 Md. 127, 571 A.2d 1213 (1990). There, the Court discussed the various functions of the order of appeal, briefs, and the like, concluding:

[T]he *Carter* decision does appear to be inconsistent with the principles that limiting language in a timely notice of appeal will be treated as surplusage, and that the *delineation of the issues on appeal is a function of the briefs,*

*information report and prehearing conference,* rather than of the notice of appeal.

319 Md. at 138, 571 A.2d 1213 (emphasis added).

In *Health Servs. Cost Review Comm'n v. Lutheran Hosp. of Md., Inc.,* 298 Md. 651, 472 A.2d 55 (1984), the Court of Appeals held that, since the Commission did not present questions or argument in its brief regarding the trial court's finding that various rates had become effective on a certain date, the issue of the effective dates was not properly before the Court and, moreover, that the Commission had no authority to issue subsequent rate changes. The Court noted, "Thus, the Commission litigated on the merits ... whether the. .. rates became effective on 1 September 1981, and whether the Commission lacked authority to issue its 1 October 1981 Order." *Id.* at 657, 472 A.2d 55. Then, referring to the posture of the case at the intermediate appellate level, the Court noted: "Although in its brief the Commission raised a multiplicity of questions ... the Commission did not raise the questions [of] ... the hospital's proposed rates be[coming] effective on 1 September 1981...." *Id.* at 661–62, 472 A.2d 55 (footnote omitted). The Court noted that, after *certiorari* was granted, the same omissions were evident from the brief filed by the Commission at the Court of Appeals. The Court then opined: "This Court has consistently held that a question not presented or argued in an appellant's brief is waived or abandoned and is, therefore, not properly preserved for review." *Id.* at 664, 472 A.2d 55. After holding that the issue of the trial court's ruling as to the effective date had not been preserved, the Court held:

*As a consequence, those questions have been determined for purposes of this case.* In short, it has been determined [by waiver and nonpreservation resulting from a failure to present questions or argument in briefs] that in this proceeding the Commission has no authority to change the hospital's present rates.

*Id.* at 664–65, 472 A.2d 55 (emphasis added, footnote omitted).

The judgment (mandate) in *Pasarew Constr. Co. v. Tower Apts., Inc.,* 205 Md. 566, 573, 109 A.2d 744 (1954) (the first

appeal) provided, *"Decree reversed, with directions to increase the amount payable to the plaintiff by $4,000, costs of this appeal to be paid by the appellee* [.]" After the mandate containing that language issued, the case was retried and again came up for appeal, in *Pasarew Constr. Co. Inc. v. Tower Apts., Inc.,* 208 Md. 396, 118 A.2d 678 (1955). A question arose as to the effect of the prior mandate in respect to whether the construction company was entitled to interest in excess of $4,000, an issue not raised in the prior appeal. The Court noted that "all the questions which may be properly raised [in an appeal] must be considered as embraced by the first appeal; and if not then raised ... *they must be considered as waived." Id.* at 402, 118 A.2d 678 (emphasis added).

In *Kline v. Kline,* 85 Md.App. 28, 36, 581 A.2d 1300 (1990), *cert. denied,* 322 Md. 240, 587 A.2d 246 (1991), this Court first noted that "[n]either party objects to the severance of the matrimonial bonds." Before addressing the issues that were raised, we noted, still in the preface, that we would affirm the judgment of divorce. In the conclusion of our opinion, we again noted that "[t]he granting of the absolute divorce ... [is] not in dispute." *Id.* at 52, 581 A.2d 1300. The subsequent order or judgment appended to the opinion simply stated: "JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION." During the remand, the issue of the divorce did not arise. Later, in the subsequent appeal, *Kline v. Kline,* 93 Md.App. 696, 700, 614 A.2d 984 (1992), we briefly noted, generally, "Neither questions that were decided nor questions that could have been raised and decided on appeal can be relitigated."

In *Watson v. Watson,* 73 Md.App. 483, 498, 534 A.2d 1365 (1988),[9] in addressing the issue of whether, on remand, counsel

---

9. *Watson* had a tortuous procedural course. The case was appealed to us and we rendered a *per curiam* opinion [No. 193, 1982 Term], remanding for a ruling on one of the counts. After that remand, it was again appealed to us and we rendered another *per curiam* opinion [No. 76, 1985 Term], in which we again directed a remand. Subsequently, on appeal, we affirmed the lower court's ruling, apparently in a *per*

fees could be assessed against an attorney, we said, "The [circuit court] award for attorney fees had initially been restricted to the litigants.... Under those circumstances, we believe the court erred by expanding the original judgment on remand to include the litigants' attorney...." *See also Foster v. State,* 305 Md. 306, 315, 503 A.2d 1326, *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986) (where the failure of criminal defendants to raise questions of instructional error in a previous appeal constituted a "waiver or abandonment of them"); *Layman v. Layman,* 84 Md.App. 183, 191, 578 A.2d 314 (1990); *Comptroller of the Treasury v. Ramsay, Scarlett & Co.,* 58 Md.App. 327, 348 n. 5, 473 A.2d 469 (1984), *rev'd on other grounds,* 302 Md. 825, 490 A.2d 1296 (1985).

 *B & K Rentals, supra,* and cases subsequent thereto, hold that, unless the specific judgments of our trial courts are preserved in questions or issues that have been presented in briefs and/or are argued, *Beck v. Mangels,* 100 Md.App. 144, 149, 640 A.2d 236 (1994), *cert. dismissed,* 337 Md. 580, 655 A.2d 370 (1995), they cannot be considered on appeal and, thus, logically cannot be reversed. *See also Ricker v. Abrams,* 263 Md. 509, 516–17, 283 A.2d 583 (1971); *Hyde v. State,* 228 Md. 209, 218, 179 A.2d 421 (1962) (question not presented in brief not before the Court of Appeals), *cert. denied,* 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); *Comptroller of Treasury v. Aerial Prods., Inc.,* 210 Md. 627, 645, 124 A.2d 805 (1956); *Pasarew Constr. Co. v. Tower Apts., Inc., supra,* 208 Md. 396, 118 A.2d 678; *Murray–Baumgartner Surgical Instrument Co. v. Requardt,* 180 Md. 245, 252, 23 A.2d 697 (1942); *Nicholson v. Yamaha Motor Co.,* 80 Md.App. 695, 716, 566 A.2d 135 (1989) (issue not presented in brief will not be considered), *cert. denied,* 318 Md. 683, 569 A.2d 1242 (1990); *DeGroft v. Lancaster Silo Co.,* 72 Md.App. 154, 159, 527 A.2d 1316 (1987); *Federal Land Bank of Baltimore, Inc. v. Esham,*

*curiam* opinion, but the Court of Appeals granted *certiorari.* Subsequently, in *Watson v. Watson,* 304 Md. 48, 497 A.2d 794 (1985), the Court of Appeals remanded the case without an affirmance or reversal. It was tried again below and then appealed to us, resulting in the appeal we now discuss.

43 Md.App. 446, 459, 406 A.2d 928 (1979) (issue not presented in appellant's initial brief not permitted to be raised in reply brief and will not be considered); *Jacober v. High Hill Realty, Inc.,* 22 Md.App. 115, 125, 321 A.2d 838 (argument not presented in brief not considered), *cert. denied,* 272 Md. 743 (1974).[10] In the prior appeal in the instant matter, we had no authority to reverse the judgment of divorce, as that issue had not been presented for appellate review.

It is, therefore, clear that, in the prior appeal in the divorce case, the case that relates to the case *sub judice,* the trial court's decision as to the divorce was not appealed. Not only did our prior order and mandate not result in a reversal of the divorce, that aspect of the judgment was not then an issue before us, and it would have been error had we reversed an issue not presented or preserved. Because the divorce was not appealed in that prior case, the question of the divorce has been determined for purposes of that case. *See B .& K Rentals, supra.* Moreover, the time for an appeal of that part of the trial court's judgment having expired, that decision is final for all purposes as well. Even if that were not to be so, and even if our prior opinion were not to be considered to be an integral part of our judgment and the resulting mandate, and even if the statement, "Judgment Reversed," were to be considered sufficient to cause a reversal of the divorce, it would have constituted a mistake by us in rendering that order or mandate; the prior opinion clearly shows that it was our intent to vacate only that part of the judgment relating to alimony.

Maryland Code (1973, 1995 Repl.Vol.), § 6–408 of the Courts and Judicial Proceedings Article (CJ), **Revisory power of court over judgment,** which by its language is not limited to any court, states:

> After the expiration of that period [30 days] the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of

---

**10.** *See also* 5 Am.Jur.2d *Appeal & Error* §§ 723, 725, 901, 953, and 955 (1962).

the court or of the clerk's office to perform a duty required by statute or rule.[11]

Consequently, this Court may retain the statutory power to correct a mistake in a judgment (mandate) at any time. Moreover, even absent a statute permitting the correction of judgments, *i.e.,* mandates, an appellate court has always had the inherent power to correct its mandates. In *George, supra,* 155 Md. 693, 142 A. 590, the Court upheld a trial court's consideration of the appellate court's prior opinion when it was reconsidering the case on remand. The Court of Appeals noted the error in the prior judgment, *i.e.,* the mandate, and noted that the error in the prior judgment had been an "oversight" on the part of the Court. It stated:

[I]t may be that the better practice would have been ... to have filed a petition in this court asking that the judgment and mandate be amended.... [But, however, in] such *a case there can be little doubt that this court has the inherent power to correct such errors.*

*Id.* at 697, 142 A. 590. It later stated:

The court, at any time either before *or after the expiration of the term* ... or of the statutory period within which judgments may be amended, may correct or amend clerical errors and misprisions of its officers, so as to make the record entry speak the truth and show the judgment which was actually rendered by the court. [Emphasis added and citation omitted.]

*See also Balducci, supra,* 304 Md. at 674, 500 A.2d 1042 ("An appellate court has the inherent authority ... to correct or amend clerical errors and irregularities ... in its issued mandate after it has been received in the court below....").

In *George,* the Court of Appeals cited several foreign cases in accord with the position in Maryland, including: *Pickett's Heirs v. Legerwood,* 32 U.S. (7 Pet.) 144, 8 L.Ed. 638 (1833);

---

**11.** These provisions are also found in the Maryland Rules, but only in the section applicable to the circuit court. The statute, however, is not specifically limited. It is unclear whether it applies to the appellate courts.

*Louisiana v. F.B. Williams Cypress Co., Ltd.*, 132 La. 949, 61 So. 988 (1913) (every court has the inherent power to correct clerical errors committed by the court); *Ott v. Boring,* 131 Wis. 472, 110 N.W. 824 (1907) ("An appellate court has the power to recall its mandate . . . to correct any mistake . . . or inadvertenance"); and *Titlow v. Cascade Oatmeal Co.,* 16 Wash. 676, 48 P. 406 (1897) (where it was argued that, because the judgment (then termed a *"remittitur"*) had been sent down and filed, it could not be recalled). The *George* Court then held: "[I]n all jurisdictions under a practice similar to ours the court has power to recall . . . and enforce the judgment according to the opinion rendered in the case." 155 Md. at 699, 142 A. 590.

The judgment in the previous case, *Harrison v. Harrison* [No. 586, slip op. at 7, 1993 Term, *per curiam,* filed Dec. 17, 1993], in order to have been consistent with our intentions as stated in the underlying opinion, should have read: "JUDGMENT AS TO ALIMONY VACATED; JUDGMENT OTHERWISE AFFIRMED; CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID 50% BY APPELLANT, 50% BY APPELLEE." We have statutory and inherent power to correct that mandate to clarify our prior judgment. As we have indicated, however, the form of judgment there rendered was, nevertheless, such as to require that the opinion be considered a part of that prior mandate. When that opinion is considered, it is clear that the divorce itself was neither presented for appellate review nor considered by us and was therefore not reversed.

We, accordingly, hold that the parties in *Harrison v. Harrison* [No. 586, 1993 Term, *per curiam,* filed Dec. 17, 1993], also the same parties here, are and have been since the trial court's rendition of the prior judgment granting the divorce, divorced from each other. We further hold that they owned the property at issue in the case *sub judice* at all times relevant to the case at bar as tenants in common. While we do not consider it necessary to answer the specific questions

raised by appellant in her brief, we shall do so in order to finalize this matter. Appellant's first question was:

I. Was it error for the trial judge below to give effect to another trial judge's order from a separate case when that order was reversed on appeal and the trial judge hereinbelow knew of the reversal?

For the reasons we have stated in our opinion, the answer is No.

II. Should the trial judge below have requested an explanation from the court's auditor (whose proposed accounting was before the judge) when the judge was informed that the auditor acknowledged that the other trial court's order was reversed, but that the auditor's proposed accounting gave effect to the reversed order because the other judge requested that the auditor do so?

For the reasons we have stated in our opinion, the answer is No.

We shall affirm the trial court's judgment in the instant case.

**JUDGMENT AFFIRMED; ALL COSTS TO BE PAID BY APPELLANT.**